SEASHORE REALTY & INVESTMENT COMPANY, peticionaria, *v.* LA JUNTA DE PLANIFICACIÓN DE PUERTO RICO, recurrida.

Número 27.

*Sometido:* 4 de diciembre de 1952. *Resuelto:* 30 de junio de 1953.

*Henry G. Molina* y *David Curet Cuevas*, abogados de la peticionaria; *Rafael R. Fuertes* y *A. Sandín del Manzano,* abogados de la recurrida.

El Juez Asociado Señor Pérez Pimentel emitió la opinión del tribunal.

El día 30 de abril de 1951, la Corporación Seashore Realty & Investment Company radicó ante la Junta de Planificación de Puerto Rico, a la que de ahora en adelante nos referiremos como la Junta, creada por la Ley núm. 213 de 12 de mayo de 1942, Leyes de ese año, pág. 1107, una declaración de intención de lotificar un predio de terreno conocido por Urbanización "La Trinchera", conforme al artículo 4 del Reglamento de Planificación núm. 3 (Reglamento de Lotificación). En una declaración complementaria, la peticionaria informa que la finca cuya lotificación se intenta fué formada por segregación y que dicha urbanización fué aprobada por el Municipio de San Juan. Continúa informando que hasta el momento de la petición se habían segregado y vendido quince de veintiocho solares quedando en su consecuencia trece solares "que aunque de hecho están lotificados y urbanizados, estamos solicitando Resolución de la Junta sancionando dicha segregación técnica, a los fines de inscribirlos como fincas independientes y venderlos." Solicitó entonces que la Junta la dispensara de presentar planos de construcción e inscripción por tratarse de obras de urbanización previamente aceptadas (artículo 75 del Reglamento de Lotificación) y por tratarse además de unas lotificaciones de carácter simple (artículo 6 del mismo reglamento).

El 27 de junio de 1951 la Junta de Planificación emitió una resolución intitulada "Requerimiento de facilidades y plano de inscripción" en la que hace constar que "Para poder considerar este caso como de carácter simple, será necesario que se provea previamente esta lotificación de un adecuado sistema de distribución y alumbrado público conforme las

normas de la Autoridad de Fuentes Fluviales, así como que se provean de aceras y encintados en el frente hacia la Carretera Insular a aquellos solares cuya segregación solicitan, así como otros que dan frente a dicha carretera y que aún no han sido legalmente segregados e inscritos en el Registro de la Propiedad . . . . Las aceras a construirse en la carretera insular serán de un ancho de 1.50 metros debiendo quedar su límite exterior a 9.00 metros del eje actual de dicha carretera con la provisión entre la acera y el encintado a construirse de una faja para arboleda de 2.00 metros de ancho y conforme con la sección típica de calle principal de 18.00 metros . . ." Continúa diciendo la Junta: "Deberá someterse a la consideración de esta Junta un Plano de Inscripción, conforme los requisitos estipulados en el Reglamento de Lotificación, para todos aquellos solares aun no inscritos en el Registro de la Propiedad, descontando de los mismos las áreas ocupadas por las aceras." Esta resolución fué notificada el 10 de julio y el 23 de julio de 1951 la peticionaria solicitó la reconsideración de dicha resolución suplicando se le dispensara de todos los requisitos exigidos por la Junta con la excepción del requisito de proveer a la Lotificación de un sistema de distribución y alumbrado público. Como razones para su solicitud señaló que la urbanización en controversia fué planeada con antelación a la vigencia de la ley que creó la Junta de Planificación y que empezó a lotificarse después del 14 de octubre de 1940 que fué la fecha en que se otorgó la escritura núm. 57 ante el notario Diego Guerrero Noble, fijando las condiciones de la urbanización, por lo que la peticionaria solicitó nuevamente que la Junta sancionara la urbanización de referencia. Alegó también la peticionaria que el exigir la construcción de una acera de 1.5 metros de ancho a lo largo de la carretera núm. 57, el borde exterior de la cual deberá quedar a 9 metros del eje de dicha carretera constituye, en efecto, una expropiación de propiedad particular sin la debida compensación pues "teniendo dicha carretera escasamente nueve metros de

ancho", la peticionaria tendría que donar una faja de nueve metros de ancho a lo largo de la urbanización para cumplir ese requisito. Igual alegación hizo en cuanto al requisito de la construcción de la faja de arboleda. Concluyó alegando que ya la Junta había aprobado implícitamente la urbanización al autorizar anteriormente las siguientes operaciones: 1) segregación de uno de los solares (cuya inscripción dijo en su resolución no haberse acreditado) porque el mismo tenía todas las facilidades mínimas exigidas por el reglamento; 2) al sancionar la venta de otro solar por igual razón; 3) al tomar igual medida en relación con otros dos solares de la urbanización en controversia. La Junta celebró una vista pública para oír a la peticionaria sobre su moción de reconsideración. La prueba documental presentada por la peticionaria consistió de la escritura de urbanización núm. 57 a que hemos hecho referencia, una certificación del Registrador de la Propiedad acreditativa de la inscripción en el registro de una serie de solares segregados de la finca en cuestión, una escritura sobre hipoteca para garantizar pagaré al portador y un plano de la urbanización.

El 13 de febrero de 1952 la Junta dictó resolución "Declarando sin lugar moción de reconsideración". En dicha resolución la Junta expresa que llegó a las siguientes conclusiones de hecho y de derecho:

"1. Que al someterse el presente caso a la consideración de esta Junta, estando en vigor la Ley 213 de 1942, según enmendada, y el Reglamento de Lotificación, tanto la Ley como el Reglamento son de entera aplicación al presente caso en cuanto a los requisitos de lotificación y urbanización exigibles se refiere en ausencia de prueba demostrativa de que todos los solares a formarse fueron segregados de hecho con antelación al 4 de septiembre de 1944 y de que todas las calles comprendidas fueron urbanizadas y aceptadas como tal por la autoridad o agencia pertinente.

"2. Que ante esta Junta no se ha sometido prueba documental fehaciente demostrativa de que las calles de la urbanización 'La Trinchera' fueran construídas y aceptadas de acuerdo

con las leyes y reglamento vigentes en el año 1940 por el Departamento de Salud y el Gobierno de la Capital.

"3. Que la certificación del Registrador de la Propiedad sometida es solamente demostrativa de que los solares núm. 2, 4, 15 y 22 fueron segregados e inscritos antes del 4 de septiembre de 1944 ya que el resto de los solares incluídos en dicha certificación en ninguna forma coinciden en cabidas con los números correspondientes en el plano sometido.

"4. Que si bien esta Junta consideró y resolvió, aislada y separadamente una serie de seis solares de los comprendidos en el plano, en todos ellos, con excepción de dos, se hicieron requerimientos y el hecho de que se consideraran dichos casos aisladamente bajo ningún concepto constituye impedimento alguno para que esta Junta considere ahora globalmente la urbanización sometida y resuelva el caso aplicando el Reglamento en todo aquello en que el mismo fuere aplicable.

"5. Que el hecho de que en un plano de urbanización figuren medidos y aislados varios solares, mientras no se verifique de hecho una segregación y se haya ejecutado la misma en cualquier forma factible con antelación al 4 de septiembre de 1944, tal situación no establece la segregación de hecho de dichos solares marcados en el plano.

"6. Que el hecho mismo de que se haya edificado un solar con anterioridad al 4 de septiembre de 1944 no establece por si solo su segregación de hecho ni hace inaplicable a dicho caso el Reglamento de Lotificación.

"7. Que la escritura núm. 57 de 14 de octubre de 1940 sometida no constituye prueba alguna demostrativa de que los solares interesados fueran segregados de hecho antes de la fecha de vigencia de la Ley y el Reglamento de Lotificación ya que solamente constituye la intención del dueño de la propiedad de urbanizar la misma en el futuro estableciendo las normas a seguirse y una serie de restricciones.

"8. Que no habiéndose demostrado a satisfacción de esta Junta mediante la presentación de prueba adecuada que las calles de la Urbanización 'La Trinchera' fueron construídas y aceptadas por las agencias pertinentes de acuerdo con las leyes y reglamentos aplicables entonces, esta Junta está plenamente facultada para exigir aquellas facilidades tales como aceras, encintados, fajas para arboledas tal como dispone el Reglamento sin que el ejercicio de dichas facultades constituya un abuso de discreción o una confiscación de la propiedad sin com-

pensación ya que esa reglamentación se aplica uniformemente a todo urbanizador y la misma está comprendida dentro del poder de policía (police power) del estado."

A petición de la Seashore Realty & Investment Company requerimos de la Junta de Planificación el envío del expediente de este caso, para revisar el mismo conforme a lo dispuesto por el artículo 26 de la Ley de Planificación y Presupuesto de Puerto Rico, Ley núm. 213 de 12 de mayo de 1942 ((1) pág. 1107),* según ha sido enmendado. Son cinco los errores que señala la peticionaria como cometidos por la Junta recurrida, a saber:

1. "Cometió error la Junta al exigir a la peticionaria, como condición previa a la aprobación de la Urbanización, que construyera aceras de 1.5 metros de ancho en los solares que den frente a la carretera Insular, muy particularmente al disponer que el borde exterior de dichas aceras quedaría a nueve metros del eje actual de dicha carretera.

2. "Cometió error la Junta al exigir a la peticionaria, como requisito previo a la aprobación de la Urbanización, que dejara una zona para arboleda de dos metros de ancho, situada entre la acera y el borde del encintado a construirse.

3. "Cometió error la Junta al requerir a la peticionaria, como requisito previo a la aprobación de la Urbanización, que excluyera del área de los solares, aquella porción dedicada a aceras ya construídas.

4. "Cometió error la Junta en la apreciación de la prueba, al revocar decisiones previas, con el único fin de compeler a la peticionaria a ceder gratuitamente parte de los terrenos necesarios para ensanchar la carretera insular número 57.

5. "Cometió error la Junta al resolver el caso sin ofrecer a la peticionaria la oportunidad de una vista justa e imparcial."

■ La primera dificultad con que nos tropezamos para poder revisar los errores señalados es la de que no existe en el expediente del caso elevado ante nos una transcripción de los procedimientos habidos en la vista oral celebrada ante el jefe de la división legal de la Junta. La peticionaria, por

---

* NOTA DEL EDITOR: Véanse Leyes núms. 388 de 1950 (Leyes de 1949–50, pág. 905) y 159 de 1951 ((1) pág. 377).

su quinto señalamiento de error, alega que fué privada de una vista imparcial debido a que el día que se celebró la vista la Junta no suministró un taquígrafo para que tomara las declaraciones de los testigos, viéndose obligada a limitarse a argumentar su caso a través de su abogado sin ofrecer sus testigos. El artículo 16 de la Ley de Planificación, etc., supra,(¹) dispone, en su tercer párrafo, que: "Si el caso fuere señalado para ser oído por un miembro, por el planificador jefe o por el jefe de la División Legal, la recomendación de éste *junto con una exposición de la evidencia* y sus conclusiones de hecho y de derecho y cualesquiera consideraciones pertinentes a la cuestión planteada ante él será radicada ante la Junta para su decisión." (Bastardillas nuestras.) En realidad, la peticionaria renunció al derecho que pudiese tener a ello, máxime cuando es posible que la Junta hubiese usado otro medio, que no fuese el taquígrafo, para obtener dicha transcripción. Sin embargo, queremos señalar que la solución de este caso se habría simplificado de obrar en autos la referida transcripción. De haber la peticionaria presentado su prueba oral, hubiéramos exigido que junto con el expediente del caso, se elevase la transcripción,(²) la que de no existir, hubiera dado lugar a que ordenáramos la celebración de una nueva vista por esa razón. *Ledesma, Admor.* v. *Tribl. de Distrito*, 73 D.P.R. 396; *Rivera* v. *Benítez, Rector*, 73 D.P.R. 377 y *de Chabert* v. *Tribunal de Distrito*, resuelto *per curiam*, 74 D.P.R. 648.

 En cuanto al primer error señalado creemos que no le asiste la razón a la peticionaria. En su alegato arguye que "compeler a la peticionaria, para que construya una acera a nueve metros del eje de una carretera que sólo tiene nueve metros de ancho, es obligarla a ceder nueve metros de terreno frente a cada uno de los solares que allí tiene para

---

(¹) De aquí en adelante nos referiremos a ésta como "la Ley".

(²) Ante la imposibilidad de elevar a este tribunal la transcripción de la evidencia por causas extraordinarias debidamente justificadas, dicha transcripción podría ser sustituída por una exposición en forma narrativa de la prueba oral. *Cf. Carrión* v. *Sampedro*, 74 D.P.R. 413.

que el gobierno los utilice en un fin público; cual es la construcción de una carretera." Como se ve la peticionaria parte de una premisa errónea. Confunde el eje de una carretera con sus bordes. El eje es la línea que divide por mitad el ancho de la carretera. Luego, no es cierto que la peticionaria tenga que ceder nueve metros a lo largo de su proyectada urbanización. La Junta nos dice en su alegato que la carretera núm. 57 tiene doce metros de ancho. La peticionaria—sobre quien recae el peso de la prueba—no ha rebatido esa alegación con prueba alguna. Simplemente se limita a decir en su alegato que el ancho de dicha carretera es de 9 metros. Es la peticionaria la que por su interés en el caso debe poner a este Tribunal en posición de poder revisar su caso. Si no lo hace así, no tiene de qué quejarse. Aceptamos, pues, la alegación de la Junta de que la carretera tiene doce metros de ancho.([3]) Luego, si la carretera tiene 12 metros de ancho, desde el eje de la carretera hasta el borde de la misma hay 6 metros, por lo que la peticionaria sólo está obligada a construir las aceras requeridas a 3 metros de dicho borde. Tenemos, pues, que examinar qué facultad tiene la Junta para exigir, como requisito previo a la aprobación de la petición de lotificación, el que la peticionaria construya aceras a nueve metros del eje de la carretera, o sea, a tres metros del borde de la misma.

La peticionaria acepta "que el Estado tiene facultad para compeler a un propietario colindante con una calle pública a construir la acera que daría frente a su propiedad" pero sostiene que dichas aceras han de construirse sobre la propiedad pública y que aquí se le está compeliendo a que la construya sobre su propiedad privada. Arguye, pues, que ello conlleva una incautación de su propiedad sin la debida compensación. No tiene razón.

---

([3]) Podemos, además, presumir que la ley ha sido acatada y que la carretera en cuestión fué construída de ese ancho acatando el mandato de la Ley Fijando la Anchura de los Caminos Insulares Municipales, aprobada en 14 de marzo de 1907, enmendada por la Ley núm. 63 de 7 de marzo de 1912 (pág. 110).

La facultad de la Junta para exigir requisitos mínimos de acuerdo con sus reglamentos, antes de impartirle su aprobación a un plano de lotificación, está reconocida. Artículo 24 de la Ley de Planificación. Así, se ha sostenido que el Estado puede exigir de un urbanizador que reserve un área mínima para dedicarla a fines públicos, tales como parques de recreo. *Zayas* v. *Junta de Planificación*, 69 D.P.R. 30, 37. También se ha sostenido que puede exigirle que las calles necesarias para dar acceso a la urbanización tengan cierta anchura. *Brous* v. *Smith*, 304 N.Y. 104, 106 N.E.2d 503. *Cf. Acosta* v. *Junta de Planificación*, 71 D.P.R. 578. Asimismo, se han sostenido como válidas disposiciones reglamentando la distancia a que se debe construir una edificación de los bordes del solar o de la calle (*setback restrictions*). *Gorieb* v. *Fox*, 274 U.S. 603, 53 A.L.R. 1210. Se ha sostenido, en fin, que comoquiera que la construcción de una urbanización trae consigo un aumento del tránsito por el lugar en que se construye, puede exigírsele al urbanizador que dedique un espacio a lo largo de la carretera pública que bordea dicha urbanización con el fin de ensanchar la misma de acuerdo con un plan general de carreteras. *Ayres* v. *City Council of City of Los Angeles*, 34 Cal.2d 31, 207 P.2d 1.

No tenemos dudas de que la construcción de la urbanización de la peticionaria ha de traer un aumento del tránsito por la carretera núm. 57. Como una medida razonable para evitar esos peligros, la Junta puede, dentro del poder de policía del Estado, exigirle a la peticionaria que construya la acera de tal forma que su límite exterior quede a una distancia de 3 metros desde el borde de la carretera (9 metros desde el eje). Con ello no se está incautando de su propiedad. *Cf. Acosta* v. *Junta de Planificación*, supra. Podemos parafrasear aquí a la Corte de California en el caso de *Ayres* v. *City Council of City of Los Angeles*, supra, y decir que es la peticionaria quien está tratando de adquirir las ventajas de una lotificación y sobre ella descansa el deber de cumplir con esas condiciones razonables para ajustarla

a la seguridad y el bienestar general de los dueños de los solares y del público. (⁴) *Cf. Torres* v. *Junta de Planificación*, 74 D.P.R. 944.

■■ Si examinamos las disposiciones del Reglamento de Lotificación notaremos que entre la superficie rodada de la carretera y la acera ha de dejarse un espacio, llamado "faja de seguridad" para separar el tránsito de vehículos del de peatones. Artículo 43 del referido reglamento. (⁵) Esa faja de seguridad que, conforme al Reglamento, la Junta exige sea de dos metros de ancho en la parte que puede utilizarse para la siembra de árboles, ha de construirse en ese espacio de tres metros que la peticionaria tiene que dejar entre el borde de la carretera y el extremo límite de la acera a construir. Entre la faja de seguridad y la carretera, la peticionaria tendrá también que construir el encintado.

_____

(⁴) El artículo 3 de la ley dispone:

"Los poderes concedidos en esta Ley se ejercerán con el propósito general de guiar el desarrollo de Puerto Rico de modo coordinado, adecuado y económico, el cual, de acuerdo con las actuales y futuras necesidades y los recursos humanos, físicos y económicos, hubiere de fomentar en la mejor forma la salud, la seguridad, la moral, el orden, la conveniencia, la prosperidad, la defensa, la cultura, la solidez económica y el bienestar general de los actuales y futuros habitantes, y aquella eficiencia y economía en el proceso de desarrollo, en la distribución de población, en el uso de las tierras y en las mejoras públicas que tiendan a crear condiciones favorables a tales fines."

(⁵) Lee así dicho artículo:

"Artículo 43.—*Fajas de Seguridad.*—La faja de seguridad se define aquí como el espacio situado entre la superficie rodada y la acera de una vía pública, e incluirá el ancho ocupado por el encintado. La faja de seguridad separa el tránsito de peatones del de vehículos, y puede utilizarse para la siembra de árboles.

"Se requerirán fajas de seguridad en todas las vías públicas a excepción de los Callejones y Senderos. En las áreas residenciales, las fajas de seguridad tendrán las anchuras que se establecen a continuación:

"(*a*) En las Avenidas, no menos de dos metros y medio (2.50).

"(*b*) En las Calles Principales, no menos de dos (2) metros.

"(*c*) En las Calles Locales, no menos de metro y cuarto (1.25).

"(*d*) En las Calles sin Salida, no menos de metro y cuarto (1.25).

"(*e*) En las Calles Marginales, no menos de dos metros y medio (2.50).

"En los centros comerciales e industriales, las fajas de seguridad de estas vías públicas podrán tener anchuras menores de acuerdo con las disposiciones del Artículo 44."

Luego, la contención de la peticionaria de que la Junta está tratando de hacer una reserva de terreno para ensanchar la carretera se cae de su propio peso, pues al construir la peticionaria la faja de seguridad con su encintado ocupará todo el ancho de los tres metros. Ya hemos visto que el artículo 43 exige anchuras mínimas para dichas fajas de seguridad, pero no impone límites máximos. Si el requisito de la Junta equivale a exigir una faja de seguridad de tres metros, la peticionaria no nos ha demostrado ninguna arbitrariedad ni irrazonabilidad en esa actuación. No podemos alterar una resolución de la Junta a menos que ésta, como cuestión de derecho([6]) haya actuado arbitrariamente, abusando de su discreción o se haya excedido en las facultades que le confiere la ley. *Torrance* v. *Bladel*, 155 P.2d 546; *Bosworth* v. *City of Lexington*, 125 S.W.2d 995; *Mingo Holding Co.* v. *Town of Harrison*, 48 A.2d 919. En fin, el reglamento, en su artículo 44, dispone que se construirán aceras a ambos lados *de* toda vía pública. Ello significa que las aceras han de construirse no *en* la vía pública sino que tiene que ser en la propiedad que bordea dichas vías públicas. Y en su alegato ante nos la peticionaria ha aceptado la validez de dicho reglamento.

▮ Ahora bien, la peticionaria sostiene que no se está aplicando la ley y el reglamento uniformemente por cuanto que el requisito de las aceras a construirse a 9 metros del eje de la carretera que le exige la Junta no se lo ha exigido a otros solares que colindan con los de la peticionaria. Sostiene por ello que "Esas aceras no serían utilizadas por los viandantes toda vez que nadie va a ser tan carente de visión, . . . . . para ir caminando a lo largo de la carretera, y una vez llegue a los solares de la peticionaria, dar una vuelta en línea perpendicular a la carretera y caminar hasta encontrar las aceras para utilizarlas. No serviría la medida a la propuesta intención de construir una acera para

---

([6]) El artículo 26 de la ley dispone que la revisión se limitará exclusivamente a cuestiones de derecho.

los viandantes. Y en segundo lugar, para poder realizar la construcción total de las aceras sería preciso tomar terrenos de los solares pertenecientes a los otros colindantes, los que tendrían que ser indemnizados. [El resultado sería] pagar a unos y tomarles gratuitamente a otros. La injusticia es tan palpable, que sometemos a consideración del Hon. Tribunal la cuestión sin argumentación adicional." Si fuera así, la resolución de la Junta sería inválida pues la reglamentación tiene que ser aplicada uniformemente y sin distinciones arbitrarias. *Leonard Inv. Co.* v. *Board of Adjustment of Trenton*, 4 A.2d 768; *Darlington v. Board of Councilmen*, 282 Ky. 778, 140 S.W.2d 392. Sin embargo, de la referida resolución se desprende que a los únicos solares que la Junta no les exige esos requisitos es a los marcados con los números 2, 4, 15 y 22 debido a que los mismos fueron segregados e inscritos antes de 1944. *Matos* v. *Junta de Planificación*, 66 D.P.R. 439; *Wilcox* v. *Registrador*, 67 D.P.R. 475; *Ramos* v. *Registrador*, 69 D.P.R. 708. En cuanto a los demás solares que la peticionaria alegó que también habían sido inscritos según certificación del Registrador de la Propiedad que acompañó a su petición, la Junta concluyó que dichos solares en forma alguna coincidían en cabidas con los números correspondientes en el plano sometido. Véase, conclusión de hechos núm. 3, supra. La peticionaria no presentó prueba alguna que desvirtuara esa conclusión ni tampoco ha alegado ante nos la incorrección de la misma. Concluimos, por ende, que no es éste el caso de una aplicación discriminatoria y arbitraria del reglamento. Es solamente a dos solares de los que bordean la carretera (los números 2 y 4) que la Junta no les exige esos requisitos y ello porque no puede hacerlo ya que de lo contrario estaría dándole efecto retroactivo a la Ley de Planificación. *Matos* v. *Junta de Planificación*, supra; *Wilcox* v. *Registrador*, supra; *Ramos* v. *Registrador*, supra; *Alicea* v. *Registrador*, 71 D.P.R. 592. Sostenemos que no se cometió el primer error.

■ El segundo error tampoco fué cometido. Ya hemos visto que el artículo 43 del Reglamento autoriza el establecimiento de una faja de seguridad para separar el tránsito de vehículos del de peatones. No hay dudas de que ese requisito está relacionado sustancialmente con la salud y seguridad públicas y el bienestar general y el mismo es válido. *Ayres* v. *City Council of City of Los Angeles,* supra. La Junta nos dice en su alegato que es esa faja de seguridad lo que exige en su resolución, aunque la ha llamado "zona de arboleda". No tenemos dudas de que es así, en efecto. Probablemente, la Junta usó el término "zona de arboleda" inducida por la disposición del artículo 43 del Reglamento al efecto de que dicha faja "puede utilizarse para la siembra de árboles." Siendo dicho requisito, como hemos dicho, válido, es forzoso concluir que no cometió la Junta el segundo error imputádole.

■ Tampoco cometió el tercer error. El artículo 40 del Reglamento dispone que "El derecho de vía de una vía pública se tomará como la distancia más corta entre las líneas que delimitan todo el espacio dedicado a uso público en esa vía pública" y autoriza a la Junta a exigir la transferencia o reserva de dicho derecho de vía.([7]) No hay dudas de que

[7] Dicho artículo provee:

"Artículo 40.—*Derechos de Vía.*—El derecho de vía de una vía pública se tomará como la distancia más corta entre las líneas que delimitan todo el espacio dedicado a uso público en esa vía pública. El derecho de vía se transferirá o se reservará por el urbanizador según lo exija la Junta y a tal efecto se establecen los siguientes mínimos:

"(*a*) Para las Carreteras Exprés, no menos de cuarenta y dos metros y medio (42.50), de los cuales se transferirán veinte (20) metros correspondientes a dos Calles Marginales, y se reservará la diferencia.

"(*b*) Para las Avenidas, no menos de treinta y tres (33) metros, de los cuales se transferirán diecinueve (19) metros, esto es, nueve metros y medio (9.50) a cada lado de éstas, correspondientes a una línea de tránsito y una línea de estacionamiento de vehículos a cada lado, además del espacio a ser dedicado a acera y a siembra de árboles, y se reservará la diferencia.

"(*c*) Para las Calles Principales, no menos de dieciocho (18) metros, que se transferirán en su totalidad.

las aceras están dentro del derecho de vía ya que es un espacio dedicado a uso público. Véanse, además, las secciones típicas de carreteras y calles (*typical cross sections*) que aparecen en las páginas 53 y 54 de la Compilación de los Reglamentos de Planificación para Puerto Rico, publicada por la Junta en 1952. Siendo ello así, la Junta puede exigir que de los solares de la urbanización se descuenten las áreas ocupadas por las aceras ya construídas, pues, de acuerdo con el artículo 40, es el urbanizador el que tiene que transferir o reservar el derecho de vía. Aceptando, al igual que lo hace la peticionaria, la validez del Reglamento, es correcta la posición de la Junta al exigir tal requisito. Podemos presumir que las aceras ya construídas a que se contrae este señalamiento son las aceras de las calles locales o principales de la urbanización. Si de acuerdo con el artículo 40, el derecho de vía de las calles principales y de las locales se transferirá en su totalidad por el urbanizador, siendo las aceras parte del derecho de vía, es lógico que las mismas no pueden estar incluídas en el área de los solares. Y la peticionaria no cuestiona la facultad que tiene la Junta para exigir del urbanizador que construya las calles necesarias para dar acceso a la urbanización, requiriendo que las mismas sean de cierto ancho, véase *Brous* v. *Smith*, supra, ni cuestiona tampoco la validez de las disposiciones de la ley y el reglamento que proveen que las calles de las urbanizaciones serán públicas. Artículos 11(*b*) de la Ley y 20 del Reglamento.

▆▆ El cuarto error tampoco fué cometido. El artículo

---

"(*d*) Para las Calles Locales, no menos de trece (13) metros, que se transferirán en su totalidad.

"(*e*) Para las Calles sin Salida, no menos de once (11) metros, que se transferirán en su totalidad.

"(*f*) Para las Calles Marginales, no menos de diez (10) metros, que se transferirán en su totalidad.

"(*g*) Para los Callejones, no menos de seis (6) metros, que se transferirán en su totalidad.

"(*h*) Para los Senderos, no menos de (3) metros, que se transferirán en su totalidad."

82 del Reglamento([8]) provee que una decisión previa de la Junta que no esté de acuerdo con el Reglamento no se aceptará como válida a menos que la Junta hubiese concedido expresamente una concesión o variación. La peticionaria no nos ha demostrado que ése sea el caso de los otros solares. La Junta no estaba obligada, pues, por tales decisiones previas si estimaba que las mismas eran erróneas por no estar de acuerdo con el Reglamento. En fin, la Junta no está obligada a actuar de la misma forma en todos los casos. *Young* v. *City of Abilene*, 195 S.W.2d 838; *Brous* v. *Town of Hempstead*, 69 N.Y.S.2d 258; *Appeal of Hasley*, 151 Pa. Super. 192, 30 A.2d 187.

*Por los razonamientos expuestos, la resolución recurrida será confirmada.*

---

([8]) Dicho artículo dispone:

"Artículo 82.—*Récord de Casos Especiales.*—Cualquier variación u omisión de detalle u obra que existiere en los planos de la lotificación aprobadas, se interpretará como aprobada de acuerdo con el presente Reglamento y no en la forma sometida. Esto es, sólo se interpretará que han sido permitidas concesiones o variaciones a las disposiciones del presente Reglamento, como casos especiales, de acuerdo con lo anteriormente dispuesto en este Título IX, cuando éstas fueran expresamente relacionadas y descritas en la correspondiente resolución o actas de la Junta, indicándose las razones que la Junta hubiere tenido para permitirlas. Variaciones o concesiones que no estuvieren así en récord como casos especiales, y especificadas en la correspondiente resolución, o en las actas de la Junta, no se aceptarán como válidas, y el urbanizador vendrá obligado a ejecutar las obras en estricta armonía con todos los requisitos de este Reglamento."