## Bosworth et al. v. City of Lexington et al.
Feb. 21, 1939.

KING SWOPE, Judge.

J. J. McBRAYER for appellants.

GAYLE MOHNEY for appellees.

Opinion of the Court by Judge Perry—Reversing in part and affirming in part.

The city planning and zoning commission was created for each city of the second class by chapter 80, 1928 Acts of the General Assembly of Kentucky. The provisions of this zoning act are now compiled in Baldwin's 1936 Revision of Carroll's Kentucky Statutes, as sections 3235f-1 to 3235f-13 inclusive.

This enabling or zoning act empowered and granted to cities of the second class, among which is the city of Lexington, the right to create city planning commissions by ordinance, for the purpose of protecting the health, safety, morals and general welfare of each city of that class, and further, to carry out such general purpose, said commission was authorized "to make, establish and adopt plans and maps of the whole or any portion of such city of the second class * * *; to lay off and establish in each city of the second class * * *

zones or districts * * *; to prescribe, administer and enforce, to the extent and in the manner provided by this act, regulations of and restrictions upon the erection, construction, reconstruction, alteration, repair or use of buildings," etc., within such districts; and to regulate and restrict, among other things, "the location and use of such buildings, structures and land for trade, industry, residence or other purposes" and further, provided that "all such regulations and restrictions shall be uniform for each class or kind of buildings throughout each zone or district." Section 3235f-3.

Further the act provides that "all plans, maps, regulations, and restrictions adopted by the commission shall be made in accordance with a comprehensive design to promote the public health or safety or morals or general welfare in the section or community so affected" and that upon the commission's making a final report, "with respect to the zones or districts which it is authorized by this act to lay off or establish, or with respect to the regulations or restrictions upon the use of property in any of said zones or districts or with respect to any maps or plans authorized by this act to be made," etc., it should be submitted, for approval or disapproval, to the board of commissioners or the general council of the city and if approved they should draft an ordinance "providing for the carrying out of said report, and for the establishment of the zones or districts therein laid off or established," which should become immediately effective and operative, as a proper exercise by the state of its police powers delegated by the act. Sections 3235f-4, 3235f-7.

The act further provides for the creation of a board of adjustment, to which it grants the following powers:

"(a) To hear and decide applications for special exceptions, as above provided.

"(b) To hear and decide appeals taken as above provided.

"(c) To authorize, upon such application or appeal, such variance from the terms of the ordinance or of any plans, rules or regulations made therein or thereunder, as will not be contrary to the public interest, where, owing to special conditions, a literal enforcement of the provisions of the ordinance will result in unnecessary hardship, and so

that the spirit of the ordinance shall be observed and substantial justice done." Section 3235f-9.

The act (Section 3235f-9a, Kentucky Statutes) further provides for and regulates appeals to the circuit court from the decisions of the board of adjustment as follows:

"All final rules or orders or findings of the board of adjustment, unless appealed from as herein provided, shall be conclusive and binding as to all questions of fact, where there is substantial evidence to support such rule, order or finding, but any property owner (including a tenant) aggrieved, or any officer, department, board or bureau of the municipality affected by such finding or final order or rule may, within twenty (20) days after the rendition of such official order * * *, by petition appeal to the circuit court of the county in which such municipality is located for the review of such order or rule of the board of adjustment. * * *

"No new or additional evidence may be introduced in the circuit court * * *, but the court shall otherwise hear the cause upon the record or abstract thereof as certified by the board of adjustment, and shall dispose of the case in a summary manner, its review being limited to determining whether or not—

"(a) The board of adjustment acted in excess of its power;

"(b) The order, decision or rule was procured by misrepresentation or fraud;

"(c) The order, decision or rule is not in conformity to the provisions of this act or of any ordinance, rule or regulation adopted pursuant thereto."

It is further provided by this section of the act that appeals may be taken as in other civil cases from the circuit court to the court of appeals.

In April, 1930, the board of commissioners of the city of Lexington, pursuant to the authority vested in it by this enabling act, duly enacted a "building zone ordinance."

By the report of the zoning commission and the

ordinance enacted, approving and enforcing such report, the property of the appellee, Grocers Baking Co., a corporation, was placed in "residence B" zone or district, in which the operation by appellee of its bakery was a prohibited or non-conforming use of property in that district.

Section 16, sub-section 3, of the ordinance provides as follows:

"(c) The extension of a non-conforming use or buildings upon the lot occupied by such use or buildings at the time of enactment of this ordinance or on a lot adjoining or directly across an alley provided that such lot was under the same ownership as the lot in question at the time of enactment of this ordinance, and where such extension is a necessary incident to the existing use, and provided that such extension or extensions shall not exceed in all 50 per cent of the reproduction value of the existing buildings and *shall in any case be undertaken within five years of the enactment of this ordinance.* However, such extension may be authorized on lots purchased after the enactment of this ordinance but in such case such extension shall not exceed 25 per cent of the reproduction value of such existing buildings. * * *"

Also it is provided by the later ordained amendatory subsection:

"(h) To permit in any district such modification of the requirements of this ordinance as said board may deem necessary to secure an appropriate development of a lot, where, adjacent to such lot, there are buildings or uses that do not conform to regulations prescribed by this ordinance for the district in which they are located."

Further, by sub-section 5 of section 16 of the ordinance, the powers of the board of adjustment are, in almost the exact language of Section 3235f-9, Kentucky Statutes, thus designated:

"To hear and decide applications for special exceptions provided for in this ordinance and filed as hereinbefore specified.

"To hear and decide appeals taken as herein provided.

"To authorize upon any such appeal any such variance from the terms and provisions of this ordinance as will not be contrary to public interest and as shall be in harmony with the. general purposes and intent of this ordinance where owing to special conditions, a literal enforcement of this ordinance would result in unnecessary hardship and so that the spirit of this ordinance shall be observed and substantial justice done."

Having set out what we deem are the applicable provisions of the statute, creating the city zoning commission, defining its purpose and conferring certain powers upon it, and also the provisions of the zoning ordinance enacted in May 1930 by the legislative power or general council of the city of Lexington pursuant to the authority given it by this zoning statute, or provision of its charter, we deem it appropriate to here set out the facts and circumstances under which the present controversy has arisen between the appellant property owners residing in this "residence B" district, on the one hand, and the appellees, the baking company, the city's board of adjustment and other officials, on the other, and which facts, as disclosed by the record of the proceedings before the board of adjustment and the lower court are as follows:

In the year 1910, the Lexington Wholesale Bakery began to operate a bakery upon a tract of land fronting sixty-four feet on W. Sixth Street in Lexington, more than twenty years prior to the adoption of the zoning ordinance. The western boundary of this tract was the belt line railroad, which afforded ready transportation for the company's products. An additional sixty feet of land, lying on the east side of the original tract, was acquired by this company in 1920, and thereafter, in 1924, the whole plant was sold to the appellee, Grocers Baking Co., which has continued the operation of the bakery to the present time. Additions were made to the plant from time to time, and the company now owns the property from Bellaire Avenue west to the railroad.

It appears that this is a large industry and investment, employing eighty persons and having an annual payroll in excess of $100,000, and that its maximum production capacity per day is approximately 50,000 pounds of bread, which the company distributes within a radius of some seventy-five. miles.

The plant at present consists of a two-story brick building fronting on W. Sixth Street for approximately one hundred feet, which houses most of the company's machinery and equipment. Adjacent to and east of this building, there is a one-story structure, also fronting on W. Sixth Street, which is used as a loading platform for trucks and as a service garage. Immediately east of this one-story structure is a vacant lot, fronting sixty-eight feet on W. Sixth Street, which is used, because of the inadequacy of the loading platform, as a parking lot for the overflow of trucks and automobiles and also for loading trucks.

It further appears that for some time neighbors living in that vicinity, including the appellants, have objected to and complained of the excessive noise caused by the operation of the bakery, and particularly that made by the mixing and wrapping machines and the loading of trucks in the vacant lot.

These objections culminated, according to the evidence, in a complaint to the grand jury of Fayette county in September, 1936, when Mr. Hikes, the president of the company, was summoned before it, who then promised it that the company would do what it found it could to alleviate the noises complained of. Pursuant to such promise, the proposition was submitted to an architect, who was familiar with and had planned the original building, with directions to make a survey of the situation and to submit plans and specifications adapted to meet the objections of the complaining property owners.

After making a careful study of the baking plant, the architect submitted a plan to the company, pursuant to which it was:

1. To enclose the vacant lot by the erection of a one-story brick building with no outside windows or openings, with the exception of one door fronting on Bellaire Avenue, so that all trucks could be loaded within an enclosure; and

2. To add a second story to the old loading room, the same to be constructed of glass brick, in order that it would not be necessary to have outside windows or openings through which noises might escape.

Both of said structures were to be equipped with mechanical ventilation and air-conditioning devices. As to the efficacy of this plan to eliminate the causes of.

complaint, the architect, Mr. Churchill, testified as fol-
lows:

> "The plan I have developed is in answer to Mr.
> Hikes' inquiry as to what he could do to make the
> noise necessary in the operation of the bakery as
> little as possible. I suggest building around it, put-
> ting in glass masonry, air-conditioning and holding
> the noise inside the building as much as possible."

Thereafter, on October 21, 1936, the company ap-
plied to the building inspector for permission to make
the above suggested improvements or alterations and
additions to the plant, as being intended not for enlarg-
ing its capacity but for reducing the noise complained
of, which was denied, when an appeal was immediately
taken from his decision to the board of adjustment, as
is by the enabling act and ordinance alike provided for.

The appellant property owners, although complain-
ing of the noise of the plant, nevertheless objected to
the company's being permitted to make the new im-
provements, designed to alleviate it, and, in response to
their objections, the board at first denied the applica-
tion and permit. Whereupon, the baking company in
December, 1936, filed in the Fayette circuit court an ac-
tion, asking the court's review of the decision of the
board of adjustment, its determination of the law and
facts involved therein, a reversal of the finding of the
board and that it require the building inspector to grant
the permit applied for.

While said action was pending in the court, the
company filed with the building inspector an applica-
tion for a rehearing, which the board on September 24,
1937, granted and after hearing its cause, directed the
building inspector to issue a permit.

From this order of the board, granting the permit,
the complaining property owners filed this action or ap-
peal in the Fayette circuit court, seeking a review and
reversal of the order.

The court thereupon remanded the cause to the
board to hear proof on the question, with the right to all
interested parties to introduce evidence for or against
the granting of the permit.

A hearing was had by the board pursuant to this
order on January 28, 1938, and a transcript of the testi-

mony introduced at that hearing appears in the record here before us.

At this hearing by the board, upon the court's remand of the cause to it for the hearing of evidence on the question as to the propriety of the board's having directed the granting of the company's permit for the "special exception," the objecting property owners, including appellants, offered no evidence, while, on the other hand, the company introduced the testimony of its officers and of architects, tending to substantially show the above facts and the feasibility of the plan to meet the objections of the property owners.

To the petition of the complaining property owners, the defendants, city of Lexington, the board of adjustment, its building inspector and the Grocers Baking Co., filed answers, pleading in substance the facts as above alleged and, further, that under the statute and the ordinance, section 16, subsection 5, enacted pursuant thereto, the board was empowered and authorized to hear and decide the company's application for a "special exception" and to authorize, upon such application, such variance from the terms of the ordinance as would not be contrary to the public interest, where, owing to special conditions, a literal enforcement of the provisions of the ordinance would result in undue hardship.

Thereafter, the cause coming on for hearing in the circuit court and having been submitted for judgment upon the pleadings and upon the record of proceedings before the board of adjustment, filed in the action, the court adjudged "that the judgment and award of the board of adjustment, dated January 28, 1938, granting the Grocers Baking Company a special exception under the zoning ordinance of the city of Lexington to make certain alterations and additions to its property at the northwest corner of West Sixth Street and Bellaire Avenue in Lexington, Kentucky, as shown on the 'blue print' and filed with the record of proceedings before said board of adjustment * * * be and the same are hereby approved and confirmed upon the condition and with the modification, however, that the east wall of the building to be constructed at the northwest corner of said Bellaire Avenue and West Sixth Street and shown on said 'blue print' as the 'New Loading Enclosure' shall be set back from the west curb line of Bellaire

Avenue as presently constructed a distance of not less than twenty-three feet * * * and the board of adjustment is authorized and directed to require the building inspector of the city of Lexington to issue a permit to the Grocers Baking Company to make said additions and alterations to its property," to all of which plaintiffs objected and excepted and prayed an appeal, which was granted. To so much of the ruling as modifies the judgment and award of the board of adjustment, the defendant, Grocers Baking Co., objected and excepted and has here moved for and been granted a cross-appeal.

The appellants base their appeal upon the provisions of section 16, subsection 3(c) of the ordinance, contending that the board of adjustment, by reason of the express limitations of the subsection, was without power to grant the permit asked, for the reason that more than five years had elapsed from the date the ordinance was passed (in April or May, 1930) to the date of the company's application for a permit made on October 21, 1936.

Appellants' sole contention appears to be that the board of adjustment was without power to grant, under this provision (c) of the ordinance, the permit, but they raise no question as to the sufficiency of the evidence to support the board's award, or that the board's ruling, in granting the permit, was arbitrary or unreasonable.

The board of adjustment and, of course, the company deny that the board's power is so limited and rely, as refuting such claim, upon section (h) of the ordinance (above set out) and upon the general powers granted to the board both by the statute and the ordinance, empowering it "to authorize, upon such application or appeal, such variance from the terms of the ordinance or of any plans, rules or regulations made therein or thereunder, as will not be contrary to the public interest, where, owing to special conditions, a literal enforcement of the provisions of the ordinance will result in unnecessary hardship."

We feel it is unnecessary to review the history of zoning legislation and of the ever increasing complexities which created forceful need for its enactment. As said by this court as to this in Fowler v. Obier, 224 Ky. 742, 7 S. W. (2d) 219:

"Zoning ordinances are creatures of recent development. They had their beginning in this country about 25 years ago. * * * These enactments are under what is commonly called the 'police power.' The people of every state have the inherent right to pass laws for the public safety, health, morals, and general welfare. The police power rests in the Legislature of the state, and no subdivision of the state may exercise that power except through a grant made by the people of the state through its legislative branch. * * * Generally speaking, the courts uphold such regulatory measures if they are related to health, safety, morals, and the general welfare of the community. Usually upon a strict scrutiny of such laws, if the courts find that they are not related in some way to health, safety, morals, and general welfare, they will be declared invalid as an unconstitutional exercise of power by the legislative branch of the government." (Page 223.)

Further it was said in the Fowler case, supra, that:

"We are of the opinion that the board of public safety (here the board of adjustment) has a discretion in the matter, and if it should grant a permit in violation of the strict letter of the ordinance it would not be assuming legislative powers, but would be carrying out the spirit of the ordinance, and we find authority for the board to so exercise its judgment; a court should not set aside the determination of public officers unless it is clear that their action is without any reasonable foundation, and is a mere arbitrary or irrational exercise of power having no substantial relation to the public health, the public morals, the public safety, or the public welfare in its proper sense." (Page 226—parenthesis ours.)

With these principles as developed and declared in the Fowler case, supra, and the many cases therein cited, as well as numerous others in accord therewith, in mind, we will now turn our attention to the consideration and determination of the question here presented, as to whether or not the lower court erred in upholding the award of the board of adjustment in granting the appellee baking company a special exception, as contended for by appellants, or in the modi-

fication made of the award, from which the baking com-, pany is appealing.

Appellants in brief state that this court has had but few cases involving the construction of the planning and zoning act and none previously involving the statute affecting cities of the second class, but they cite three cases involving appeals affecting the zoning ordinance of the city of Louisville, which are: the Fowler case, supra; A. L. Carrithers & Sons v. City of Louisville, 250 Ky. 462, 63 S. W. (2d) 493; and Smith v. Selligman, 270 Ky. 69, 109 S. W. (2d) 14, relied on by appellee, generally holding that the board is vested with discretion in granting special exceptions due to special conditions and to make variance from the terms of an ordinance as will not be contrary to public interest, but insists that ''in none of these cases affecting the ordinance of the city of Louisville do we find the question involved in this case, where the ordinance specifically and unequivocally provides and limits the time in which an application shall be made to the board of adjustment for special exception.'' Counsel for appellants insists that no case, or so he believes, can be found where the discretion of the board of adjustment in making a variance or granting the exception can be extended to ignore the limitation, fixed in the ordinance, of the time in which an application may be filed for such special exception and that the board is without power here to make such exception, where the application therefor had not been made within the five year period elapsing since the enacting date of the ordinance in April, 1930.

However, even if such subsection 3(c), section 16 of the ordinance stood alone and without qualification or amendment by other provisions of the ordinance, it would yet be extremely doubtful whether such provision of the ordinance, by which the board of adjustment was denied the right to grant an exception or make a variance from the literal provisions of the ordinance five years after its passage, is constitutional, where the provision of the statute, a part of the city's charter, directed an ordinance made pursuant to its authorization and also empowered the board of adjustment to make such special exception or variance as occasions arose calling for their making, free from or without limitation upon the time within which such application is presented. To so contend, it appears, is tantamount to insisting that the provisions of the ordinance should take

precedence over that made by the statute, with which we can not concur.

McQuillin says as to this, in his work on Municipal Corporations, vol. 2, page 560, that:

"The charter of the city is the organic law of the corporation, and it bears the same general relation to the ordinances of the city that the constitution of the state bears to the statutes. The proposition is self-evident, therefore, that an ordinance can no more change or limit the effect of the charter than a legislative act can modify or supersede a provision of the constitution of the state."

A municipal corporation being a mere creature of the state, deriving its powers from the special enactments of its legislature, it must follow that the section of the ordinance relied on by appellants cannot have the effect of limiting the general power conferred upon the board of adjustment by the statute.

However, it is not necessary to here go so far as to hold that subsection 3(c), section 16 of the ordinance, is without effect because of this limitation clause, where we find the same was amended by subsection 3(h), section 16 of the ordinance, which provides that, in cases presenting facts exactly analogous to those here found, and regardless of the time in which application for a special exception is made, the board is authorized "to permit in any district such modification of the requirements of this ordinance as said Board may deem necessary to secure an appropriate development of a lot, where adjacent to such lot there are buildings or uses that do not conform to regulations prescribed by this ordinance for the district in which they are located."

This subsection (h), it is clear, specifically grants to the board the power to permit in any district such modification of the requirements of this zoning ordinance as the board may deem necessary to secure the appropriate development of a lot, where, adjacent to such lot, there are buildings or uses which are not conforming to the regulations prescribed by the ordinance.

We so held in the Fowler case, as quoted supra, wherein we said:

"We are of the opinion that the board of public safety has a discretion in the matter, and if it

shoula grant a permit in violation of the strict letter of the ordinance it would not be assuming legislative powers, but would be carrying out the spirit of the ordinance, and we find authority for the board to so exercise its judgment."

Further do we find, as argued by appellees, that the question before us was presented and determined by the Massachusetts court in 1933 in Amero v. Board of Appeal of City of Gloucester, 283 Mass. 45, 186 N. E. 61, 63, where an application for a special exception, authorizing the installation of certain additions to an existing garage, was granted and the objection was raised, among others, that the board had exceeded its powers under a certain section of the ordinance in granting the permit. The court, in affirming the award, said:

"The board was not confined to the grounds for variance specified in the Gloucester ordinance. * * * It had the powers conferred by section 27A. Its statement of reasons and its record show that there was evidence before it of a public convenience to be served by granting the permit sought. * * * It properly could be thought not to derogate from the purpose of the zoning ordinance, but to remove an unnecessary hardship upon the petitioner while conferring a benefit upon the abutting owners and many in the neighborhood."

Section 27A, above referred to, is a section of the general statutes of Massachusetts, almost identical with that section of the Kentucky Statutes conferring power upon the board of adjustment to make variances in special cases.

See to like effect the case of L. & M. Inv. Co. v. Cutler, 125 Ohio St. 12, 180 N. E. 379, 86 A. L. R. 707.

Further, we are clear in our conclusion reached that the provision of subsection 3(c) of the ordinance is not to be given the construction contended for by appellants, as having the effect of tying the hands of the board of adjustment in granting relief by making a variance or granting a permit as a special exception to property owners only in those cases where same was applied for within the period of five years following the enactment of the ordinance, regardless of the fact that just as meritorious claims, coming under the undue

hardship provision of the ordinance, would likely be presented after the expiration of such period.

Clearly, an ordinance, intended to avoid inflicting undue hardship upon owners of property of non-conforming use by enforcement of the literal provisions of the ordinance, is not to be construed as mandatorily limiting the time in which justice is to be administered, by granting a variance from the literal terms of the ordinance, and because of such limitation of the ordinance, that the board of adjustment would thereafter be called on to impose an injustice through withholding the granting of relief otherwise provided for by the ordinance.

The Grocers Baking Co.'s plant was at the time of the enactment of the zoning ordinance in 1930 an existing manufacturing plant, which, even though it was a non-conforming use of such property within the residence zone in which located, was by the ordinance excepted from its restrictions and its continued operation of its plant permitted; and further were the property rights of the owner safeguarded and protected by the provision of the statute and ordinance that needed alterations or extensions might thereafter be permitted as presenting a proper exception to the general inhibition of the zoning ordinance, if such variance therefrom was not contrary to the public interest and where, owing to special conditions, a literal enforcement of the ordinance would result in unnecessary hardship to the owner.

We are, therefore, of the opinion that the trial court rightly upheld the action of the board of adjustment and in directing it to grant the company's application for a permit to make the requested additions and alterations to its plant.

However, we are of the opinion that the court erred, when approving and affirming the award and judgment of the board of adjustment, in conditioning such affirmation with the modification that the east wall of the building should be constructed back a distance different from what had been found and ruled as a proper distance at which to begin the construction of the east wall of the building addition.

The court, under the provisions of Section 3235f-9a, Kentucky Statutes, was limited, upon its review of the case, to a consideration of the evidence heard by

the board of adjustment, as certified by the board to it, and on which alone it must decide the case.

There was no evidence heard by the Board of Adjustment supporting this ruling and finding of the court, in holding that there should be additional ground given by the baking company for the widening of Bellaire Avenue, above the amount it had voluntarily given the city of ten feet from the east line of its lot for such purpose. This offer was approved and accepted by the board, and there being no evidence whatever tending to show that same was not proper, or why it should be changed, we are of the opinion that the court, in adjudging that the appellee, Grocers Baking Co., should give a greater amount of its land to the city, for widening its street, when so ordered, without the support of substantial or any evidence, erred, and therefore its judgment, to the extent only which it attempts to so modify the award of the board, is reversed.

Judgment reversed in part and affirmed in part.