**TEXAS MANUFACTURED HOUSING ASSOCIATION, INC. and A.J. Waller, Sr., Plaintiffs,**

v.

**CITY OF NEDERLAND, and Zoning Board of Appeals of the City of Nederland, Defendants.**

No. 1:94–CV–0398.

United States District Court, E.D. Texas, Beaumont Division.

Sept. 7, 1995.

Opinion Reaffirming Decision on Reconsideration Oct. 9, 1995.

Warren G. Clark, Jr., Swearingen Clark & Sikes, Port Arthur, TX, James E. Cuellar, J. Lawton Henry, D. Brent Wells, Wells & Associates, Houston, TX, William L. Ehrle, Sr., Ehrle & Associates PC, Austin, TX, for A.J. Waller, Sr. and Texas Manufactured Housing Association Inc.

Frank David Calvert, Benckenstein & Oxford, Beaumont, TX, Glenn H. Steele, Jr., Provost & Umphrey, Beaumont, TX, Richard D. Hughes, Provost & Umphrey Law Firm, L.L.P., Port Arthur, TX, for City of Nederland and Zoning Board of Appeals, City of Nederland.

### *MEMORANDUM OPINION*

COBB, District Judge.

Before this court is the City of Nederland and the Zoning Board of Appeals of the City of Nederland's Motion for Summary Judgment. Plaintiffs, A.J. Waller and Texas Manufactured Housing Association, Inc., brought this court action alleging approximately a dozen causes of action arising from the City of Nederland's adoption of a 1970 zoning ordinance ("Ordinance 259"). Plaintiffs charge Defendants with various Constitutional torts as well as with denying Plaintiffs of both substantive and procedural due process, equal protection, just compensation, privileges and immunities, and privacy. Plaintiffs also claim that both federal and state law have preempted the subject matter of Ordinance 259. For the reasons stated below, this court finds that Ordinance 259 is a valid exercise of the local police power of

the City of Nederland and is not otherwise unlawful as a violation of Plaintiffs' constitutional rights. This court is not convinced by the Defendants' claim that res judicata should bar Mr. Waller or this suit from proceeding due to the previous resolution by Final Order of the state court litigation. In any event, summary judgment for the Defendants is warranted on the merits of this dispute. Therefore, this court GRANTS the Defendant's Motion for Summary Judgment and DISMISSES the Plaintiffs' claims against the Defendants.

## I. BACKGROUND

Texas Manufactured Housing Association, Inc. ("Texas Housing") and Mr. Waller brought suit to invalidate Nederland's alleged discriminatory and unconstitutional zoning ordinance which restricts the placement of mobile homes to limited areas within the city. Plaintiffs' complaint alleges that Ordinance 259 violates the Fifth and Fourteenth Amendments of the Constitution; the National Manufactured Housing and Safety Standards Act of 1974, 42 U.S.C. §§ 5401–5426; and the Texas Manufactured Housing Standards Act, Article 5221f, Tex.Rev.Civ. Stat.. Plaintiffs further contend Ordinance 259 impermissibly burdens interstate commerce causing Texas Housing to incur damages.

In 1970, the City of Nederland adopted Ordinance 259 which regulates the placement and installation of "trailer coaches" within the city limits. In 1991, Mr. Waller applied for a permit to install a HUD-code manufactured home (this is the term used for a mobile home manufactured to HUD standards) on his private property. In 1992, Mr. Waller again applied for a building permit to install a HUD-code manufactured home on his property. Both requests were denied. Subsequently, Waller brought a state court action against the City of Nederland. On April 15, 1994, the 136th Judicial District Court of Texas issued an order stating that the City of Nederland was entitled to enforce its ordinances as long as those ordinances did not conflict with the Texas Act.

On April 18, 1994, Mr. Waller once again applied for a permit to install a HUD-code manufactured home. In denying the request, Nederland's Building Official was of the opinion that a HUD-code manufactured home was considered a trailer coach, and, therefore, should not be permitted under Ordinance 259. Mr. Waller then filed an appeal with the Zoning Board of Appeals of the City of Nederland. The Zoning Board also denied his request. Mr. Waller, along with Texas Housing, then initiated suit in this court seeking damages and injunctive relief enjoining Nederland from enforcing Ordinance 259. Jurisdiction over this matter is conferred by the operation of 28 U.S.C. sections 1331 and 1343(a).

## II. ANALYSIS

### A. STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate when the moving party is able to demonstrate that the pleadings, depositions, affidavits, and other appropriate evidence available to the court establish that there are no genuine issues of material fact and that the moving party is entitled to summary judgment as a matter of law. Fed.R.Civ.P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 323–25, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 585–88, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). There are no genuine issues of material fact "[w]here the record taken as a whole could not lead a rational trier of fact to find for a non-moving party...." Leonard v. Dixie Well Service Supply, Inc., 828 F.2d 291, 293–94 (5th Cir.1987).

This court views the evidence and all factual inferences from that evidence in the light most favorable to the party opposing summary judgment. Eastman Kodak v. Image Technical Services, 504 U.S. 451, 456, 112 S.Ct. 2072, 2077, 119 L.Ed.2d 265 (1992); Matsushita, 475 U.S. at 587, 106 S.Ct. at 1356.

### B. THE PREEMPTION CLAIMS

The Plaintiffs claim that Ordinance 259 encroaches upon an area expressly preempt-

ed by both federal and state law. Because the statutory language in question differs somewhat, each statute will be discussed in turn.

### 1. The Federal Act

■ The lines of inquiry are identical whether it be either state statute or local ordinance which is being scrutinized against the preemptive force of federal law. *City of Burbank v. Lockheed Air Terminal, Inc.*, 411 U.S. 624, 638, 93 S.Ct. 1854, 1862, 36 L.Ed.2d 547 (1973). Federal preemption analysis is foremost an exercise in enforcing the Supremacy Clause. The reach of the federal action in question is determined by congressional intent regarding statutory construction. *Guschke v. City of Oklahoma City*, 763 F.2d 379, 383 (10th Cir.1985).

■ Congress can make it easy to recognize how much, if any, state law is to be preempted through the use of express preemptive language. *Michigan Canners and Freezers Ass'n, Inc. v. Agricultural Marketing and Bargaining Board*, 467 U.S. 461, 104 S.Ct. 2518, 81 L.Ed.2d 399 (1984). Express preemptive language may be found on the face of a statute, in its legislative history, or in regulations promulgated pursuant to the law. *Howard v. Uniroyal, Inc.*, 719 F.2d 1552, 1556 (11th Cir.1983). Preemptive intent may also be inferred when Congress legislates comprehensively, thus occupying an entire field of regulation, or when state law actually conflicts with federal law thereby standing as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress. *Michigan Canners*, 467 U.S. at 469, 104 S.Ct. at 2523.

The preemptive intent of Congress for the National Manufactured Housing and Safety Standards Act is expressly set out in section 5403(d) of the Act itself:

> Whenever a Federal [mobile] home construction and safety standard established under this chapter is in effect, no State or political subdivision of a State shall have authority either to establish, or to continue in effect, with respect to any [mobile] home covered, any standard regarding construction or safety applicable to the same aspect of performance of such [mobile] home

which is not identical to the Federal [mobile] home construction and safety standard.

■ Congress made clear vis-a-vis the areas in which it is acting (here, *construction and safety*), federal mobile home standards are to be the only permissible ones. To understand the scope of preemption, however, the court often must look beyond the words of preemption to the very purposes of federal statute. The National Manufactured Housing and Safety Standards Act's express purpose is to reduce injuries and risks resulting from manufactured home accidents and to improve the quality of manufactured homes. 42 U.S.C. § 5401. The Department of Housing and Urban Development regulations adopted pursuant to the Act establish performance requirements, *see* 24 C.F.R. § 3280.1(b), in order to protect the public against any unreasonable risks of accidents due to the design or construction of mobile homes. *See id.* § 3280.2(a)(18).

■ Ordinance 259 is a land use law enacted to preserve property values within the City of Nederland. Unlike the local zoning law struck down in *Scurlock v. City of Lynn Haven*, Nederland is not attempting to exclude the plaintiff's mobile home from areas of the city "based solely on [the city's] safety code." 858 F.2d 1521, 1525 (11th Cir.1988). The court in *Lynn Haven* held that the city "cannot attempt land use and planning through the guise of a safety provision in an ordinance when that safety requirement is preempted by federal law. *See Pacific Gas & Electric Co. v. State Energy Resources Commission*, 461 U.S. 190, 204–216, 103 S.Ct. 1713, 1722–28, 75 L.Ed.2d 752 (1983)." *Id.* at 1525.

■ In the case at bar, the Plaintiffs claim that Nederland believes its Standard Building Code is superior in terms of safety construction to that of the HUD-code for manufactured homes. This allegation that Ordinance 259 is a "disguised attempt to regulate construction or safety" is wholly without colorable support in the record. Plaintiffs seem to mistakenly relate the issue of preemption with their claim that the ordinance is arbitrary and capricious. This ordi-

nance, whether arbitrary or not, does not relate in any way to construction and safety standards. Ordinance 259, a zoning law regulating the location of HUD-code manufactured homes and other mobile homes, is not preempted by the National Manufactured Housing and Safety Standards Act.

### 2. The State Act

■ State preemption analysis begins with article XI, sec. 5 of the Texas Constitution which commands that no ordinance "shall contain any provision inconsistent with . . . the general laws enacted by the Legislature of this State." *See also Dallas Merchant's and Concessionaire's Ass'n v. City of Dallas,* 852 S.W.2d 489, 491 (Tex.1993).

■ Plaintiffs claim that Ordinance 259 conflicts with the Texas Manufactured Housing Standards Act (TMHSA), Article 5221f, Tex.Rev.Civ.Stat. The legislative reach of this statute can be easily defined. The TMHSA attempts to encourage the construction of housing for the state's citizens and improve the safety and general welfare of purchasers of manufactured housing in the state. Art. 5221f § 2.

The Florida state preemption issue in *Lynn Haven* was quite different than the preemption issue in this suit. Florida had a state statute which expressly prohibited zoning classifications based upon the mobility of a dwelling. Texas has no such statute.

In *City of Brookside Village v. Comeau,* 633 S.W.2d 790 (Tex.), *cert. denied,* 459 U.S. 1087, 103 S.Ct. 570, 74 L.Ed.2d 932 (1982), a court for the first time addressed the issue of a municipality's restriction on the location of manufactured homes in Texas. The court held "that such regulation of mobile homes represents a valid exercise of a municipality's police power." *Id.* at 793. The Texas Supreme Court found that the ordinance in question bore an adequate relationship to the public health, safety, morals or general welfare.

Plaintiffs claim that section 4A of the TMHSA strips Texas municipalities of their zoning power via-a-vis HUD-code manufactured homes. This is a misreading of section 4A of bewildering proportions. The plain meaning of section 4A, let alone the holding of *Comeau,* makes clear a municipality's power to regulate HUD-code manufactured homes:

> An incorporated city may prohibit the installation of a mobile home for use or occupancy as a residential dwelling within its corporate limits. . . . Upon application the installation of HUD–Code manufactured homes shall be permitted as residential dwellings in those areas determined appropriate by the city. . . .

■ The TMHSA does allow existing mobile homes to be switched out for HUD-code manufactured homes. The TMHSA also forbids cities from taking action against mobile homes which were lawfully located in a city before a zoning law went into effect. In short, the Texas legislature decided to forbid cities from zoning residents out of their established housing and to allow persons who currently were lawfully residing in a mobile home to replace that mobile home with a HUD-code manufactured home. The Texas legislature, however, provided not as much as a hint that municipalities were no longer free to regulate the location of HUD-code manufactured homes. Indeed, the construction of the statute makes clear that cities need only allow HUD-code manufactured homes in areas "determined appropriate"; the statute does not command cities to allow the HUD-code manufactured homes in "all areas" of their cities. Ordinance 259 is not preempted by the Texas Manufactured Housing Standards Act.

### C. FOURTEENTH AMENDMENT CLAIMS

■ Municipalities may zone land to pursue any number of legitimate objectives related to the health, safety, morals or general welfare of the community. Ever since the Supreme Court case of *Euclid v. Ambler Realty Company,* 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926), the power of municipalities to enact zoning ordinances has been fully upheld.

### 1. Due Process Claims
#### a. Substantive Due Process

■ Federal courts reviewing local zoning decisions are to utilize the same con-

stitutional standards employed in reviewing statutes enacted by state legislatures. *Shelton v. City of College Station*, 780 F.2d 475, 479 (5th Cir.1980), *cert. denied* 477 U.S. 905, 106 S.Ct. 3276, 91 L.Ed.2d 566 (1986). Because the Plaintiffs in the case at bar are challenging Nederland's legislative judgment, the Plaintiffs are not asked to simply show that a disputed historical fact is more likely than not to be true; rather, they must prove that "the legislative facts on which the classification is apparently based could not reasonably be conceived to be true by the governmental decisionmaker." *Vance v. Bradley*, 440 U.S. 93, 110–11, 99 S.Ct. 939, 949, 59 L.Ed.2d 171 (1979).

▆▆▆▆ Federal judicial interference with a zoning ordinance is proper only if the governmental body could have no legitimate reason for its decision. *See Shelton* at 483. "The key inquiry is whether the question is 'at least debatable'.... If it is, there is no denial of substantive due process as a matter of federal constitutional law." *Id.* (citation omitted).

To prevail at trial, the Plaintiffs must establish Nederland's belief that, if left unregulated as to location, HUD-code manufactured homes may reduce surrounding property values is irrational. Defendants, however, have been able to show there to be no genuine issue of fact as to the rationality of their property value judgment.

▆▆▆▆ This court finds as a matter of law that a reasonable individual could argue that mobile homes may adversely affect the property values of surrounding areas. Because Nederland has "at least debatable" grounds for distinguishing mobile homes from site-built and modular homes, as a matter of constitutional law, it did not act arbitrarily and capriciously nor deny Plaintiffs substantive due process.

▆▆▆▆ The court need not focus upon record facts and may look merely to hypothesized purposes rather than insisting Defendants prove their actual purpose, or basis of their decision and the rationality of that basis for decision. *Shelton*, 780 F.2d at 480, 481.

### 2. Equal Protection

▆▆▆▆ The Plaintiffs' equal protection claim likewise fails under Fifth Circuit precedent. If the legislative purpose is legitimate, an equal protection challenge fails if it is at least debatable that the ordinance in question has a rational relationship to the legislative purpose. *See Stern v. Tarrant County Hospital District*, 778 F.2d 1052, 1056 (5th Cir.1985), *cert. denied*, 476 U.S. 1108, 106 S.Ct. 1957, 90 L.Ed.2d 365 (1986); *Kaplan v. Clear Lake City Water Authority*, 794 F.2d 1059 (5th Cir.1986); *Katzenbach v. Morgan*, 384 U.S. 641, 657, 86 S.Ct. 1717, 1727, 16 L.Ed.2d 828 (1966). "The constitutional test for rationality of a legitimate classification, whether the classes be distinguished in the text of the law or in its administration, is whether any rational decisionmaker could have so classified." *Stern*, 778 F.2d at 1056 (citations omitted).

### 3. Takings and Procedural Due Process

▆▆▆▆ A reasonable ordinance which may result in the reduction of property values does not itself create a compensable taking. The typical municipal land use ordinance enacted after an individual has purchased the land in question does not constitute a taking. *See Agins v. City of Tiburon*, 447 U.S. 255, 100 S.Ct. 2138, 65 L.Ed.2d 106 (1980). Even if the economically optimal use of Mr. Waller's land is foreclosed, the fundamental attributes of ownership remain intact. Mr. Waller can continue to make beneficial use of his land. Hence, Ordinance 259 does not constitute a compensable taking.

### 4. The Right to Privacy

As tempting as it is for this court to announce new personal rights which are fundamental or implicit in the concept of ordered liberty, it declines to do so. If it were to develop new and progressive rights to privacy, the Plaintiffs' claims would neither be recognized in this new jurisprudence nor as falling under any traditionally protected penumbra. *See Paul v. Davis*, 424 U.S. 693, 713, 96 S.Ct. 1155, 1166, 47 L.Ed.2d 405 (1976).

## D. THE INTERSTATE COMMERCE AND RIGHT TO TRAVEL CLAIMS

▮ Nederland's zoning scheme does not differentiate between HUD-code homes built within the state and those built outside the state. Indeed, Ordinance 259 is simply meant to conserve property values. Hence, Ordinance 259 is facially non-discriminatory and is designed to meet a legitimate social welfare objective. For Commerce Clause analysis in these circumstances, the court is reluctant to intervene:

> Where the [government enactment] regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits.... If a legitimate local purpose is found, then the question becomes one of degree.

*Pike v. Bruce Church, Inc.,* 397 U.S. 137, 142, 90 S.Ct. 844, 847, 25 L.Ed.2d 174 (1970) (citation omitted). This court holds that Ordinance 259 is not unduly burdensome on interstate commerce in light of its limited effect on free movement of interstate commerce and the traditional state police power concerns the ordinance addresses. *See, e.g., Minnesota v. Clover Leaf Creamery Co.,* 449 U.S. 456, 101 S.Ct. 715, 66 L.Ed.2d 659 (1981).

Furthermore, the claims regarding Ordinance 259's burden on the right to travel are baseless. Right to travel generally implicates residency requirements. Here, the law in question puts an insignificant burden, if any whatsoever, on individuals' right to travel interstate.

### CONCLUSION

Federal courts are not a forum for the review of every run-of-the-mill land-use dispute. *Lemke v. Cass County, Nebraska,* 846 F.2d 469 (8th Cir.1987); *Delta Environmental Services, Inc. v. Plaquemines Parish Government,* 708 F.Supp. 136, 141 (E.D.La. 1989). These political disputes do not rise to the level of Constitutional significance.

▮ Even if Nederland's government made an unwise decision or their decision-making process was not as thorough as Plaintiffs would like, the bottom line is this: the judiciary will defer to political decisions regarding the health, safety, morals and welfare of the citizenry which are at least minimally reasonable and do not otherwise insidiously discriminate or infringe upon fundamental interests.

The two legislative enactments in this case preempt the field of mobile home regulation as to construction, safety, and installation of mobile homes. These statutes do not conflict with Nederland's ordinance regulating the location of mobile homes. Hence, Ordinance 259 is hereby upheld as compatible with state and federal legislation.

If general improvements in the appearance and quality of manufactured mobile homes are indeed as Plaintiffs contend, then their resources would be better invested in championing the power of their argument. In so doing, they may persuade municipalities like defendant Nederland to alter ordinances regarding such restrictions. Such changes, however, are political matters to be determined by the legislative not judicial process.

### MEMORANDUM OPINION ON RECONSIDERATION

The Plaintiffs' Motion for Reconsideration asks this court to vacate its summary judgment order of September 7, 1995. Plaintiffs, A.J. Waller and Texas Manufactured Housing Association, Inc., brought this court action alleging various causes of action arising from the City of Nederland's adoption of a 1970 zoning ordinance ("Ordinance 259"). This court reaffirms its finding that Ordinance 259 is a valid exercise of the local police power of the City of Nederland and is not otherwise unlawful as a violation of the plaintiffs' constitutional rights.

Plaintiffs had initially alleged over ten different violations of federal, state, and constitutional law. In this Motion to Reconsider they have re-urged two issues in particular. First, the plaintiffs repeat their contention that the National Manufactured Housing and Safety Standards Act of 1974, 42 U.S.C. §§ 5401–5426, preempts Ordinance 259.

Second, the plaintiffs implore the court to "get it right" in regard to its dormant commerce clause analysis. After due consideration of plaintiffs' counsel's florid language on the preemption and dormant commerce clause issues, this court holds that Ordinance 259 does not violate the National Manufactured Housing and Safety Standards Act nor the commerce clause.

## I. Alleged Federal Preemption

### A. The Use of Faulty Syllogisms

The plaintiffs attempt to show this court by a simplistic syllogism that the court ignored their irrefutable logic. However, the so-called syllogism is erroneous because both the major and minor premises are faulty and not germane to this court's original analysis. The plaintiffs attempt to set up the straw man and, by destruction of the straw man, achieve their desired result. It does not work.

The two presumptions ascribed to the defendants are conveniently numbered in the plaintiffs' motion. Number one is "that the outward appearance of manufactured housing renders it incompatible with 'conventional' housing." Number two is "that mixing visually compatible and incompatible uses of property drives down the value of the former." The summary judgment order in no way relied on these premises.

Rather, this court found that the rationale for Ordinance 259 was the preservation of property values. There are a number of reasons why property values were thought to be jeopardized by mobile homes scattered about the city. The most potent one, however, centered on the very nature of mobile homes (viz., they are mobile). It is not, then, that mobile homes look different or are structurally inferior to stationary homes. It is, instead, that there is a belief on the part of some property owners and the city council that mobile homes reduce land value. What consumers believe is what the market produces. Any policy which the officials could have reasonably believed to be in the best interests of the city will not be disturbed. In the case at bar, safety was not a factor in the adoption of Ordinance 259, let alone its "sole basis" for enactment. Cf. Scurlock v. City of Lynn Haven, 858 F.2d 1521, 1525 (11th Cir. 1988).

### B. Obfuscation and Trick Questions

A second reason why summary judgment is opposed by the plaintiffs is prompted by an alleged fact question. Plaintiffs assert that the motive of the responsible city officials, as developed in the record, is a question for the trier of fact. Specifically, the plaintiffs point to depositions wherein city officials acceded that a home which was built in accordance with the Southern Building Code would be permissible outside of trailer parks. This is sophistry. There were a number of different points made during the relevant depositions cited by the plaintiffs, but the meat of these soliloquies ran along these lines:

> Plaintiff's Counsel (PC): Would you allow HUD-code manufactured homes outside of trailer parks in Nederland?
>
> City Official (CO): No, that would violate Ordinance 259.
>
> PC: Why do you have Ordinance 259?
>
> CO: Because the mobility of HUD-code manufactured homes can reduce the value of surrounding property if they are not properly zoned.
>
> PC: If a HUD-code manufactured home was constructed to the specifications of the Southern Building Code, would that home be allowed outside of trailer parks in Nederland?
>
> CO: I don't understand.
>
> PC: If a HUD-code manufactured home was constructed like a site-built or modular home, would it be regulated by Ordinance 259?
>
> CO: I guess not.

The plaintiffs point to this type of "evidence" to prove that Ordinance 259 meant to regulate "safety and construction" standards. This sophistry is clever, but not determinative. The fact is that any mobile home which was built to the Southern Building Code would no longer be mobile. Hence, property values would not be jeopardized. It is not that the hypothetical homes are built to the Southern Building Code which makes their location permissible, but rather that they are

not mobile. The manner in which the plaintiffs' counsel worded the questions, however, did not give the witnesses the opportunity to evade his insincere web. The plaintiffs' ability to obfuscate issues in the record does not manufacture issues of fact.

Although one could continue to explain precisely why the record does not support a finding that Ordinance 259 regulates safety, this court is mindful of the exponential growth of the Federal Reporter and Federal Supplement. That said, this court incorporates the findings made in its Memorandum Opinion of September 7, 1995. Ordinance 259 is by no means a "disguised" attempt to regulate the safety or construction of HUD-code manufactured homes. Hence, Ordinance 259 does not violate the National Manufactured Housing and Safety Standards Act of 1974.

## II. Alleged Violation of the Dormant Commerce Clause

Plaintiffs' counsel does not mince words when he pronounces in no uncertain terms that "this Court's application of the law was manifestly incorrect." Without apology, I disagree with learned counsel.

██ "The limitation imposed by the Commerce Clause 'is by no means absolute' and 'the States retain authority under their general police powers to regulate matters of 'legitimate local concern,' even though interstate commerce may be affected." *Maine v. Taylor*, 477 U.S. 131, 138, 106 S.Ct. 2440, 2447, 91 L.Ed.2d 110 (1985). There are two different standards which the Supreme Court has promulgated for courts evaluating legislation under the dormant commerce clause. *Id.* One standard applies where legislation affirmatively discriminates against interstate commerce, while the other standard applies where the legislation burdens interstate commerce incidentally.

██ Where, as here, the ordinance in question does not directly discriminate on the basis of interstate commerce, this court is directed by *Pike v. Bruce Church* to apply a balancing test. 397 U.S. 137, 142, 90 S.Ct. 844, 847, 25 L.Ed.2d 174 (1970). Ordinance 259 regulates evenhandedly with only inci-

dental effects on interstate commerce. The burden on interstate commerce is not excessive in relation to the important local interests served by the ordinance. *See Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 101 S.Ct. 715, 66 L.Ed.2d 659 (1981). *See also Dorrance v. McCarthy*, 957 F.2d 761, 763 (10th Cir.1992) (finding that the person challenging an ordinance that regulates evenhandedly bears the burden of showing that the burden on commerce is excessive).

### *CONCLUSION*

The plaintiffs invite this court to re-sculpt the contours of federal constitutional law. Specifically, they wish this court to overrule Supreme Court cases in literally half a dozen areas of jurisprudence. A representative sampling of these cases includes *Pike v. Bruce Church, Euclid v. Ambler Realty Company*, 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926), *Vance v. Bradley*, 440 U.S. 93, 110–11, 99 S.Ct. 939, 949, 59 L.Ed.2d 171 (1979), *Katzenbach v. Morgan*, 384 U.S. 641, 657, 86 S.Ct. 1717, 1727, 16 L.Ed.2d 828 (1966), *Agins v. City of Tiburon*, 447 U.S. 255, 100 S.Ct. 2138, 65 L.Ed.2d 106 (1980), and *Paul v. Davis*, 424 U.S. 693, 713, 96 S.Ct. 1155, 1166, 47 L.Ed.2d 405 (1976). This court declines the plaintiffs' invitation.