Anna Mae McCOLLUM; John McCollum; and Harrison's Pic–Pac Inc., d/b/a Harrison's Homes Of Berea, Appellants,

v.

CITY OF BEREA, Kentucky; and Berea Board Of Adjustment, Appellees.

No. 1999–CA–000608–MR.

Court of Appeals of Kentucky.

April 21, 2000.

Rehearing Denied June 23, 2000.

Discretionary Review Denied Sept. 20, 2001.

Michael R. Eaves, Sword, Floyd, Moody, Bohannon, Eaves, Fernandez, Olds & Murphy, Richmond, Kentucky, Nora J. Shepherd, on brief, for Appellants.

James T. Gilbert, Coy, Gilbert & Gilbert, Richmond, Kentucky, for Appellees.

BEFORE: BARBER, HUDDLESTON and MILLER, Judges.

## OPINION

HUDDLESTON, Judge:

Anna Mae McCollum, John McCollum and Harrison's Pic–Pac Inc., d/b/a Harri-

son's Homes of Berea, appeal from a summary judgment for the City of Berea, Kentucky, and the Berea Board of Adjustment. This case presents an issue of potentially far-reaching impact in the Commonwealth, that is, whether a city can regulate the location of mobile homes[1] within its boundaries by exercising its police power, which is allegedly justified by concerns about the public welfare, including property values.

## I. FACTS AND PROCEDURAL HISTORY

The McCollums own property in the City of Berea that is currently zoned R–3, a classification that restricts its use to single and multi-family residences. Because they believed that their existing home was dangerous and unfit for human habitation, the McCollums purchased a double-wide 1,232–square–foot manufactured home from Harrison's Homes. The McCollums intended to demolish the existing home and replace it with the manufactured home.

When the McCollums sought approval to place the manufactured home on their property, the City of Berea Planning and Zoning Administrator denied their request because the manufactured home fell within the zoning code's definition of a mobile home and, as such, it had to be placed within an area zoned for mobile homes. In doing so, the administrator wrote:

> Section 81.308 of the Berea Zoning Ordinance states that mobile homes are prohibited uses in all districts unless they are in an approved mobile home park. Section 81.005 defines a mobile home as the following:

> "A dwelling unit, factory built and factory assembled, designed for conveyance after fabrication, on streets and highways on its own wheels, or on flatbed, or other trailers, and arriving at the site where it is to be occupied as a dwelling unit complete and ready for occupancy, except for minor and incidental unpacking and assembly operations such as locating on jacks, or other foundation, or connection to utilities. A pre-fabricated home or structure, not defined above, which currently complies with enforceable building codes, shall not be included in this definition."

> Based on these sections of the Berea Zoning Ordinance, I am unable to issue a permit to allow the placement of a mobile home on a lot on Lena Street. This area is currently zoned R–3, and not applicable to a mobile home park under the current regulations.

The McCollums appealed the administrator's decision, and the Berea Board of Adjustment upheld his decision. The Board based its decision on its belief that "the proposed structure does not meet the current enforceable building code, which is the Kentucky Building Code."

The McCollums and Harrison's Homes filed suit against the City and the Board. They challenged Berea's Zoning Code, both on its face and as applied, arguing in essence that the ordinances: (1) violate the United States Constitution in several ways—Supremacy Clause, substantive due process, and preemption; (2) attempt to regulate in excess of the power granted by the General Assembly; and (3) fail to provide for an area for manufactured homes, which is arbitrary and capricious.

---

1. We use the term "mobile home" interchangeably with the term "manufactured home," while acknowledging that the construction of mobile homes has improved greatly over the past thirty years. However, as the trial court noted: "Even though mobile homes have a more pejorative connotation than manufactured housing, it is merely a rose by another name."

Both sides moved for summary judgment, and the circuit court granted the City's motion. The court found that there existed no genuine issues of material fact, thus applying *Steelvest, Inc. v. Scansteel Service Center, Inc.*[2] The court determined that the zoning ordinance's definition of "mobile homes" was broad enough to include the definition of "manufactured housing" under federal law. In addressing the constitutional arguments advanced by the McCollums and Harrison's Homes, the court followed the decision of the federal district court in *Texas Manufactured Housing Ass'n v. City of Nederland,*[3] in which it was held that while the HUD code dictates *how* a manufactured housing structure is built, the states are free under their police power and through local zoning to dictate *where* manufactured housing is to be located. For this reason, the trial court ruled that the City's limitation on the placement of manufactured housing was not erroneous and arbitrary nor did it unduly burden interstate commerce.

## II. CITY'S EXERCISE OF POLICE POWER

"The standard of review on appeal of a summary judgment is whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law."[4] It was the responsibility of the trial court to consider all of the evidence in a light most favorable to the nonmoving party, and grant the motion only if "it appears that it would be impossible for the [nonmoving party] to produce evidence at the trial warranting a judgment in his favor."[5] Because the facts are not in dispute, we must decide whether the court erred in applying the law to the case.[6]

On appeal, the McCollums and Harrison's Homes have framed various arguments for this Court to address. Because we believe the core issue is whether regulating the location of mobile homes within a city's boundaries falls within the city's police power, we deem it unnecessary to address the appellants' other claims. The appellants argue that the ordinance is an exercise of the City's police power in excess of the power the Commonwealth granted to the City. Likewise, they claim that the decision of the Zoning Administrator is arbitrary and capricious.

■ In order to demonstrate that a governmental unit has violated a party's substantive due process rights when a fundamental right is not involved, the party must establish that the ordinance in question is "clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare."[7] Because the appellants have failed to do so, we affirm.

■ Under Kentucky law, cities enjoy

2. Ky., 807 S.W.2d 476 (1991).

3. 905 F.Supp. 371 (E.D.Tex.1995), *aff'd*, 101 F.3d 1095 (5th Cir.1996).

4. *Scifres v. Kraft*, Ky.App., 916 S.W.2d 779, 781 (1996).

5. *Steelvest, Inc., supra*, n. 2, at 480 (quoting *Paintsville Hosp. Co. v. Rose*, Ky., 683 S.W.2d 255, 256 (1985)).

6. *See Puckett v. Elsner*, Ky., 303 S.W.2d 250 (1957) (noting that summary judgment is not appropriate if any material issue of fact exists).

7. *Village of Euclid v. Ambler Realty Co.*, 272 U.S. 365, 395, 47 S.Ct. 114, 121, 71 L.Ed. 303, 313–14 (1926) (citing *Cusack Co. v. City of Chicago*, 242 U.S. 526, 530–31, 37 S.Ct. 190, 192, 61 L.Ed. 472, 475–76 (1917); *Jacobson v. Massachusetts*, 197 U.S. 11, 30–31, 25 S.Ct. 358, 363, 49 L.Ed. 643, 651–52 (1905)).

no inherent police power.[8] Cities can only exercise such power if the General Assembly has delegated it.[9] Proper functions of a city's police power include promoting the health, safety and public welfare of its citizens.[10] The legislature's delegation of power to cities to establish zoning classifications is an example of the delegation of police power. Kentucky Revised Statute (KRS) 100.203(1) provides, in part, that:

> The city or county may regulate:
>
> . . . .
>
> (b) The size, width, height, bulk, location of structures, buildings and signs;
>
> (c) Minimum or maximum areas or percentages of areas, courts, yards, or other open spaces or bodies of water which are to be left unoccupied, and minimum distance requirements between buildings or other structures;
>
> . . . .
>
> (e) Districts of special interest to the proper development of the community, including, but not limited to, exclusive use districts, historical districts, planned business districts, planned industrial districts, renewal, rehabilitation, and con-

servation districts; planned neighborhood and group housing districts[.]

In response to the General Assembly's grant of police power to cities, the City of Berea has adopted various zoning ordinances.[11] Section 81.005 of Berea's Zoning Code defines a mobile home. Under Berea's Zoning Code, a mobile home can only be located in an approved MP (mobile home) zone.

■ Historically, courts have upheld zoning ordinances regulating the location of mobile homes based on concerns about health, safety and public welfare. As Kentucky's highest court noted in *Selligman v. Von Allmen Bros.*,[12] "[i]t is only where such ordinances are related in some way to the health, safety, morals and general welfare that they are valid." [13]

More recent cases, while acknowledging the importance of promoting health and safety, focus on property values as being a legitimate concern involving the public welfare. In *Berman v. Parker*,[14] the United States Supreme Court observed that "[t]he concept of the public welfare is broad and inclusive. The values it represents are spiritual as well as physical, aesthetic as well as monetary." [15]

---

**8.** *See Southeastern Displays, Inc. v. Ward,* Ky., 414 S.W.2d 573, 575 (1967) (citing *Jones v. Russell,* 224 Ky. 390, 6 S.W.2d 460 (1928); *City of Somerset v. Weise,* Ky., 263 S.W.2d 921 (1954)); *Fowler v. Obier,* 224 Ky. 742, 7 S.W.2d 219, 223 (1928).

**9.** *See Southeastern Displays, Inc., supra,* n. 8, at 575 (citing *Fowler v. Obier,* 224 Ky. 742, 7 S.W.2d 219, 223 (1928)).

**10.** *See Schloemer v. City of Louisville,* 298 Ky. 286, 182 S.W.2d 782, 783 (1944); *Bosworth v. City of Lexington,* 277 Ky. 90, 125 S.W.2d 995, 1000 (1939); *Fowler, supra,* n. 8, 7 S.W.2d at 223.

**11.** In 1986, the General Assembly gave cities and counties the power to enact zoning regulations. According to KRS 100.203(4)(c), restrictions on land which is to be used for

agricultural purposes are limited and mobile homes may be permitted, but "shall have regulations imposed which are applicable, such as zoning. . . ." That statute is inapplicable to the residential property at issue in this case.

**12.** 297 Ky. 121, 179 S.W.2d 207 (1944).

**13.** *Id.,* 179 S.W.2d at 208–209 (citing *Fowler v. Obier, supra,* n. 8; *Smith v. Selligman,* 270 Ky. 69, 109 S.W.2d 14 (1937)); *Bosworth v. City of Lexington,* 277 Ky. 90, 125 S.W.2d 995 (1939); *Village of Euclid v. Ambler Realty Co., supra,* n. 7.

**14.** 348 U.S. 26, 75 S.Ct. 98, 99 L.Ed. 27 (1954).

**15.** *Id.* at 33, 75 S.Ct. at 102, 99 L.Ed. at 37–38 (citation omitted).

Kentucky's highest court has also held that property values of neighboring properties is a legitimate concern of government.[16] In *Schloemer v. City of Louisville*,[17] the Court addressed a request to allow a lot to be used as a gasoline filling station. The Court noted that "[t]he evidence is to the effect that the erection of the filling station, or any commercial building, on this lot will decrease the value of other residential property in the neighborhood. This decrease in the value of surrounding property would cause the city a loss in taxes and is directly related to the public welfare." [18]

■ In this case, the McCo... and Harrison's Homes are attacking the validity of Berea's Zoning Ordinances. When the validity of an ordinance is attacked:

The presumption is in favor of the ordinance and the burden is on the property owner attacking it to show its unreasonableness. Should reasonable minds differ as to whether the restriction has a substantial relation to the public health, morals, safety, or general welfare, the ordinance must stand as a valid exercise of the police power.[19]

■ The appellants argue that the zoning ordinances dealing with mobile homes are different because the ordinances focus on the type of structure erected on a piece of property, instead of its use. The appellants believe that the City adopted these ordinances in the guise of protecting property values when the ordinances really do not serve that purpose. In actuality, they aver, the City is trying to regulate the construction of mobile homes.

■ The City and Board respond that people develop perceptions about areas in a community. As an area may be perceived to be a high crime area, citizens of a community may believe that mobile homes decrease neighboring property values. Protecting the values of neighboring properties, as has been said, is a legitimate aim of a city's police power. In response to the concern, the City has enacted zoning ordinances to restrict mobile homes to designated areas within the city.

This is an issue of first impression in the Commonwealth. As such, we seek guidance from the decisions of other jurisdictions which have addressed the question of whether mobile homes can be excluded from certain zoned areas within a municipality.[20] In *Colorado Manufactured Housing Ass'n v. City of Salida*,[21] challenges were mounted to several cities' ordinances that prohibited manufactured homes from being located in all residential

16. See *Schloemer, supra*, n. 10, 298 Ky. 286, 182 S.W.2d at 784; *Pierson Trapp Co. v. Peak*, Ky., 340 S.W.2d 456, 460 (1960).

17. 298 Ky. 286, 182 S.W.2d 782 (1944).

18. *Schloemer, supra*, n. 10, 298 Ky. 286, 182 S.W.2d at 784 (citing *Neef v. City of Springfield*, 380 Ill. 275, 43 N.E.2d 947 (1942)).

19. *Schloemer, supra*, n. 10, 298 Ky. 286, 182 S.W.2d at 783 (citing *City of Dallas v. Lively*, 161 S.W.2d 895 (Tex.Civ.App.1942)). *See also Village of Euclid, supra*, 272 U.S. at 388, 47 S.Ct. at 118, 71 L.Ed. at 310–11 ("If the validity of the legislative classification for zoning purposes be fairly debatable, the legisla-

tive judgment must be allowed to control.") (citing *Radice v. New York*, 264 U.S. 292, 294, 44 S.Ct. 325, 326, 68 L.Ed. 690, 694 (1924)).

20. For a discussion of decisions on this issue from other jurisdictions, see Jay M. Zitter, Annotation, *Validity of Zoning or Building Regulations Restricting Mobile Homes or Trailers to Established Mobile Home or Trailer Parks*, 17 A.L.R.4th 106 (1982).

21. 977 F.Supp. 1080 (D.Colo.1997). *But see Robinson Township v. Knoll*, 410 Mich. 293, 302 N.W.2d 146 (1981) finding a *per se* exclusion of mobile homes from all areas except mobile home parks to have no reasonable basis under the police power.

areas within the municipality other than designated zones. In that case, "[m]unicipal officials testified that the objectives of the various ordinances include compatibility of housing and preservation of both the tax base and market values of site-built homes."[22] The court found that it was the responsibility of local governments to address "perceived needs relating to government functions, e.g. stability within the community and property values."[23]

Whether Plaintiffs' arguments concerning these issues are better reasoned than public perception does not trump the democratic process; the remedy is public debate and persuasion and not judicial fiat or ukase. In the absence of invidious discrimination based upon such illicit factors as race, religion or national origin, a majoritarian preference or persuasion, however "accurate," is a legitimate basis for local legislation.[24]

In addressing the plaintiffs' arguments, the federal district court noted that they had failed to refute the cities' reasons for enacting the ordinances. In fact, the court found that the specific purpose behind these ordinances was to address the public's perception regarding mobile homes. Thus, the court held that the ordinances were legal exercises of the municipalities' police power.

On appellate review of *Texas Manufactured Housing Ass'n v. City of Nederland*,[25] the case upon which Madison Circuit Court relied, the United States Court of Appeals for the Fifth Circuit upheld the district court's decision allowing a municipality to restrict the location of mobile homes. The City of Nederland enacted an ordinance restricting the placement of manufactured homes to designated mobile home parks. The Court found that the ordinance

restricts the placement of manufactured housing inside the City's limits to trailer parks in an effort to prevent haphazard placement of such housing throughout the City and thereby prevent a concomitant decline in property values. Conservation of property values is a legitimate governmental interest well within the broad scope of the police power.[26]

The Court determined that the city believed that mobile homes would have a detrimental impact on property values if placed throughout the community. The Court concluded that "[r]estricting manufactured housing to trailer parks directly responds to this legitimate concern."[27]

In this case, the appellants have failed to establish that the City's ordinances restricting the location of mobile homes are unreasonable. While reasonable minds may differ as to the need for such regulation, the City properly exercised its police power in adopting these zoning ordinances. Kentucky case law clearly supports the proposition that cities have the power to enact zoning regulations to protect the values of neighboring properties. In this instance, the City has specifically done that by limiting the placement of mobile homes to mobile home parks.

**22.** *Id.* at 1085.

**23.** *Id.*

**24.** *Id.* at 1086.

**25.** 101 F.3d 1095 (5th Cir.1996).

**26.** *Id.* at 1105. *See also City of Brookside Village v. Comeau,* 633 S.W.2d 790, 793 (Tex. 1982) ("We hold that such regulation of mobile homes [to be placed only in mobile home parks] represents a valid exercise of a municipality's police power").

**27.** *Texas Manufactured Housing Ass'n, supra,* n. 25, at 1105.

### III.   CONCLUSION

The judgment is affirmed.

ALL CONCUR.