**COLORADO MANUFACTURED HOUSING ASSOCIATION; D&E Enterprises, Inc. d/b/a Aspen Homes; Iris Copeland; Bob's Quality Housing, Inc., a Colorado corporation; Westerra Homes Corporation, a Colorado corporation; H Construction, Inc., a Colorado corporation; and Leonard and Joanne Leapoldt, Plaintiffs,**

v.

**CITY OF SALIDA, COLORADO; Town of Silt, Colorado; City of Fountain, Colorado; and Town of Frederick, Colorado, Defendants.**

Civil Action No. 94–K–421.

United States District Court,
D. Colorado.

Sept. 25, 1997.

Thomas Frank, Terrence P. Murray, Frank & Finger, P.C., Evergreen, CO, Hal B. Warren, Hal B. Warren, L.L.C., Evergreen, CO, for Plaintiffs.

Steven J. Dawes, Senter, Goldfarb & Rice, L.L.C., Denver, CO, Richard E. Samson, Samson & Brown, Longmont, CO, for Defendants.

## MEMORANDUM OPINION, FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER FOR ENTRY OF JUDGMENT

KANE, Senior District Judge.

This case is before me on Plaintiffs' claims that the zoning ordinances of the City of Salida, Town of Silt, City of Fountain and Town of Frederick infringe upon their constitutional rights. The case is described in the November 21, 1996 Memorandum Opinion and Order ("the Memorandum Opinion") relating to various motions then pending, including motions for summary judgment. *See Colorado Manufactured Housing Ass'n v. Board of County Comm'rs,* 946 F.Supp. 1539 (D.Colo.1996).

Trial to court began on September 2, 1997 and concluded on September 8, 1997. I have reviewed the transcript of proceedings, the exhibits admitted at trial, the parties' briefs and the record of the proceedings. My findings of fact and conclusions of law follow, as required by Rule 52 of the Federal Rules of Civil Procedure.

## I. *JURISDICTION.*

Plaintiffs allege this court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343(a)(3) and 1367(a). Defendants contest subject matter jurisdiction, asserting Plaintiffs lack standing. I find Plaintiffs have standing and I have jurisdiction.

## II. *SUMMARY.*

Plaintiffs are dealers of manufactured homes, the association to which these dealers belong (Colorado Manufactured Housing Association), a builder who installs manufactured homes, and individuals who wanted to buy manufactured homes and install them in the Defendant cities and towns but were denied building permits. Defendants are the City of Salida, Town of Silt, City of Fountain, and Town of Frederick.

Plaintiffs asserted claims for declaratory and injunctive relief alleging that Defendants Silt and Salida, through the enactment of specific ordinances or other regulations representing official governmental policy, or through the practice of their respective officials and employees representing such governmental policy, had established and continued in effect standards regarding the construction or safety of manufactured homes which deviate from and are specifically preempted by provisions of the National Manufactured Housing Construction and Safety Standards Act of 1974 (Title VI of Pub. L, 93–383, 88 Stat. 700, 42 U.S.C. § 5401 *et seq.*) In the Memorandum Opinion, I found as a matter of law that the Salida and Silt zoning ordinances are preempted by federal law and declared them invalid under the preemption doctrine. *See Colorado Manufactured Housing Ass'n,* 946 F.Supp. at 1552–53.

Plaintiffs have asserted claims for declaratory and injunctive relief as well as money damages against Defendants Fountain and Frederick under 42 U.S.C. § 1983 alleging these Defendants have enacted and enforced zoning regulations concerning manufactured housing which violate their rights under the Equal Protection and Due Process Clauses of the United States Constitution.

With the exception of Plaintiff Colorado Manufactured Housing Association ("CMHA"), each Plaintiff has also asserted a claim for money damages against one of the Defendants under 42 U.S.C. § 1983, alleging that the enactment and enforcement of the standards and zoning ordinances in question have violated their constitutional rights afforded under the Commerce Clause, Article I, Section 8, of the United States Constitution.

Defendants generally deny their actions were improper or have otherwise caused damage to any of the Plaintiffs. They also assert affirmative defenses.

## III. *DISCUSSION.*

### A. *Facts.*

From the totality of the evidence, I make the following findings of fact relevant to my decision:

### 1. *Fountain.*

In November 1993, Plaintiff WesTerra Homes Corporation ("WesTerra"), a dealer of Uniform Building Code ("UBC") manufactured homes, entered into negotiations with Plaintiff H Construction, Inc. concerning the purchase by H Construction, Inc. ("H Construction") from WesTerra of up to seven UBC manufactured homes to be installed on real property owned by H Construction located in Fountain, Colorado, and zoned R–1. Roger Walker, President of WesTerra, attended a meeting with David A. Smedsrud, Planning and Economic Development Director for the City of Fountain. Mr. Smedsrud advised Mr. Walker that the manufactured homes in question would constitute either "manufactured homes" or "factory-built homes" for purposes of the Fountain Zoning Ordinance, and that neither "manufactured homes" nor "factory-built homes" are permitted in areas zoned R–1 and instead may be installed only in areas of the city designated as a "Manufactured Home Park

and Subdivision (MHPS)." As a result of Fountain's refusal to permit installation of the homes in question, WesTerra has been unable to complete the sale of the homes to H Construction.

Under the Fountain ordinance, the term "Dwelling Unit" is defined as:

> A building, or portion thereof, which is used exclusively for residential occupancy by one (1) family, which contains cooking, living, sleeping and sanitary facilities and having a separate entrance.

The ordinance defines the term "Single–Family Dwelling" as "[a] detached principal building arranged, designed and intended to be occupied by not more than one (1) family." The term "Manufactured Home" is defined as:

> A single-family dwelling which is partially or entirely manufactured in a factory, is not less than twenty-four (24) feet in width and thirty-six (36) feet in length, is installed on an engineered permanent foundation, has brick, wood or cosmetically equivalent exterior siding and a pitched roof and is certified pursuant to the National Manufactured Housing Construction and Safety Standards Act of 1974, 42 U.S.C. [§] 5401, *et seq.,* as amended, and is built for the Colorado climate and snow loads according to the Department of Housing and Urban Development standards established under the provisions of 42 U.S.C. [§] 5401, *et seq.*

The Fountain Ordinance provides for the exclusion of manufactured homes, as well as "factory built homes" certified by the Colorado Division of Housing pursuant to Colo.Rev. Stat. § 24–32–709 and 710 (1997) [1] from all residentially-zoned areas other than areas designated as an "MHPS Mobile Home Park and Mobile Home Subdivision District."

### 2. *Silt and Salida.*

Samuel and Katherine Trujillo entered into a contract to buy a manufactured home from

---

1. The Fountain Zoning Ordinance defines the term "factory built home" as follows:

   > A single-family dwelling which is partially or entirely manufactured in a factory and designed for long-term residential use; built in multiple sections, each on a chassis which enables it to be transported to its occupancy site. Factory built homes must be constructed to the standards of the State of Colorado Factory Built Housing Construction Certification Code (8 CCR 1302–3) and bear a certification insignia in compliance with those standards.

Plaintiff Aspen Homes, to be installed on a property in Salida. Salida officials refused to grant a building permit for the home, stating that a manufactured home could not be installed on the proposed site. The Trujillos terminated the contract to buy a manufactured home from Aspen Homes, citing the permit denial as a major factor in the cancellation.

Similarly, the Town of Silt refused to allow Plaintiff Iris Copeland to install a HUD-code manufactured home she had ordered from Bob's Quality Housing, Inc. on land she owned in Silt. Copeland was told by a Silt employee that she could not install the manufactured home on that property because the zoning ordinances prohibited such homes. Copeland cancelled the contract with Bob's Quality Housing, Inc. She later ordered a different house from the same company.

As discussed in the November 21, 1996 Memorandum Opinion and Order, the Silt and Salida zoning ordinances required compliance with the UBC in order for a manufactured home to be installed in their primary residential zones. I found as a matter of law that the Salida and Silt zoning ordinances are preempted by federal law and declared them invalid under the preemption doctrine. *See Colorado Manufactured Housing Ass'n*, 946 F.Supp. at 1552–53.

### 3. *Frederick.*

In July 1992, Leonard and Joanne Leapoldt ("the Leapoldts") purchased a residential lot located at 349 Second Street in Frederick, Colorado zoned R–1. In October 1994, the Leapoldts, after being advised by the Town of Frederick that they could not install on the lot in question a Housing and Urban Development ("HUD") Code manufactured home which they had contracted to purchase, entered into a contract with Aetna Building Corporation to purchase a $102,000 UBC manufactured home.[2] The Leapoldts applied

to the Town of Frederick for a building permit to install the UBC manufactured home on the lot but were advised by the town that, under its revised municipal code, all manufactured housing, including UBC manufactured housing, was excluded from areas zoned R–1 and could be installed only in those areas specifically zoned for "mobile homes" or "manufactured homes." Thereafter, the Leapoldts applied for a variance from the town to install the UBC manufactured home on the lot in question but their request was denied in January 1995.

Section 16–7(b) (6) of Frederick's zoning ordinance, like Fountain's ordinance, defines the term "dwelling" as:

[A] building containing at least eight hundred twenty (820) square feet of floor area and used exclusively for residential occupancy, as a single-family dwelling; two-family and multiple-family dwellings shall have at least seven hundred (700) square feet of floor area which is used exclusively for residential occupancy.

Section 16–7(b) (8) of the ordinance defines the term "single-family dwelling" as:

[A] detached building designed exclusively for occupancy by one (1) family, but not including mobile home, otherwise provided herein.

Section 16–7(b)(20) of the ordinance defines the term "manufactured home" as "a single-family dwelling which is partially or entirely manufactured in a factory."

Sections 16–8 and 16–9 of the Frederick ordinance set forth the permitted uses in districts zoned "R–1 Residential" and "R–2 Residential," respectively. Pursuant to these sections, permitted uses in R–1 and R–2 districts include "single-family dwellings." The sections make no reference to "manufactured homes," which, by implication, are excluded from all residential areas zoned R–1 and R–2.[3]

---

**2.** It is "undisputed that the relevant UBC standards are more stringent than the analogous HUD standards" in terms of manufactured home construction, design and safety standards. *Colorado Manufactured Housing Ass'n v. Pueblo County*, 857 P.2d 507, 509 (Colo.App.1993).

**3.** Before the Town of Frederick enacted Ordinance No. 385 on July 28, 1994, "single-family dwellings, including manufactured homes," were permitted in areas zoned R–1 and R–2. Ordinance No. 385 specifically deleted the language "including manufactured homes" from the Frederick Zoning Code, resulting in the implied ex-

4. *Findings relevant to Salida, Silt, Fountain and Frederick.*

The existing manufactured houses by and large do not look like the site-built houses and are assessed lower for tax purposes than the site-built houses in Defendant communities. The public perception in each Defendant municipality is that manufactured or factory-built housing is incompatible with site-built housing, and negatively affects property values, the tax base and the stability of the community. In the case of each Defendant municipality, public hearings were held before the planning commissions and before the city councils concerning the zoning ordinances, and public views and opinions were taken into consideration in the planning process.

None of the Defendants completely eliminates manufactured housing from its territory. The Silt ordinance permits HUD-code homes to be placed in neighborhoods zoned R–3, while restricting their placement in R–1 and R–2. Salida permits HUD-code homes in zone R–4, but restricts them in R–1 and R–3. Fountain's ordinance limits placement of HUD-code and UBC-code homes to the MHPS zone and the PZ–R zone. Similarly, Frederick's Zoning Code restricts HUD-code and UBC-code homes to a low-density residential zone, MFH, consisting of dwellings partially or entirely manufactured in a factory.

### B. *Conclusions of Law.*

Applying these findings of fact to the applicable legal standards, I reach the following conclusions of law:

1. *Standing.*

One of the affirmative defenses is that Plaintiffs lack standing and this court therefore lacks subject matter jurisdiction. Defendants further assert CMHA lacks associational standing, and therefore I lack subject matter jurisdiction over the Association's claims brought on behalf of its members. They also argue, because Plaintiffs' claims are not ripe, this court lacks subject matter jurisdiction.

clusion of all manufactured housing from areas

■ The purchaser and dealer Plaintiffs allege constitutional deprivations and economic injury caused by the zoning ordinances which resulted in refusal to permit installation of the manufactured homes. Such injuries are direct and concrete and, assuming the ordinances are found to be invalid, such injuries could be redressed. *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 559–61, 112 S.Ct. 2130, 2135–37, 119 L.Ed.2d 351 (1992).

I have already determined that CMHA lacks standing to assert claims for damages and CMHA has withdrawn any damage claims. *See Colorado Manufactured Housing Ass'n,* 946 F.Supp. at 1548. Defendants' second argument, that CMHA lacks standing because its members lack standing to sue in their own right, is moot in light of the discussion above. Plaintiffs WesTerra, Aspen Homes, and Bob's Quality Housing, Inc. are all members of CMHA and, because they have standing to sue, CMHA has associational standing. *See Colorado Taxpayers Union, Inc. v. Romer,* 963 F.2d 1394, 1397–98 (10th Cir.1992) (adopting the three-part test in *Hunt v. Washington State Apple Advertising Comm'n,* 432 U.S. 333, 343, 97 S.Ct. 2434, 2441, 53 L.Ed.2d 383 (1977)), *cert. denied,* 507 U.S. 949, 113 S.Ct. 1360, 122 L.Ed.2d 739 (1993).

2. *Claims against Defendants Fountain and Frederick under 42 U.S.C. § 1983 for violation of rights under the Equal Protection and Due Process Clauses of the United States Constitution.*

Plaintiffs have asserted claims for declaratory and injunctive relief as well as money damages against Defendants Fountain and Frederick under 42 U.S.C. § 1983, alleging these Defendants have enacted and enforced zoning regulations concerning manufactured housing which violate their rights under the Equal Protection and Due Process Clauses of the United States Constitution.

■ The enactment of zoning ordinances is a legitimate police power of local governments. To prevail on a substantive due process claim, plaintiffs must establish the chal-

zoned R–1 and R–2.

lenged ordinance is "clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare." *Village of Euclid, Ohio v. Ambler Realty Co.,* 272 U.S. 365, 395, 47 S.Ct. 114, 121, 71 L.Ed. 303 (1926); *see also, Jacobs, Visconsi & Jacobs, Co. v. City of Lawrence, Kansas,* 927 F.2d 1111, 1119 (10th Cir.1991). Stated otherwise, a zoning ordinance will not violate the Due Process Clause unless plaintiffs can show there is no rational basis for the ordinance. *Texas Manufactured Housing Ass'n, Inc. v. Nederland,* 101 F.3d 1095, 1106 (5th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 2497, 138 L.Ed.2d 1003 (1997).

■ Equal protection is also analyzed under the rational basis standard. Zoning ordinances that involve neither a suspect nor quasi-suspect class nor a fundamental right do not violate the equal protection clause unless plaintiffs can establish that the ordinance has no reasonable basis, *i.e.,* is not rationally related to a legitimate local governmental interest. *Jacobs, Visconsi & Jacobs,* 927 F.2d at 1119; *Texas Manufactured Housing Ass'n,* 101 F.3d at 1106.

Under each ordinance at issue, manufactured homes are treated differently from site-built homes and are automatically excluded from certain areas in which site-built homes are permitted. Municipal officials testified that the objectives of the various ordinances include compatibility of housing and preservation of both the tax base and market values of site-built homes.

Plaintiffs maintain these objectives are not legitimate because there is nothing inherently different about manufactured housing which justifies such different treatment. Further, they argue, even if one assumes all of these objectives are legitimate, the ordinances as presently drafted are unreasonable and not rationally related to the identified objectives.

The issue, however, is not whether there is anything inherently different about manufactured housing, but whether there is a public perception in each of the Defendant communities that such a difference exists. If there is indeed a perception among the public in Silt, Salida, Fountain or Frederick that man-

ufactured houses are incompatible with site-built houses, threaten the tax base or cause depreciation of market values of site-built homes, the municipalities are not required to perform studies to establish the correctness of such perceptions. Rather, the legislative branch of local government is authorized to address those problems without assessing the validity of the public concerns.

The fact that such concerns exist is sufficient to empower Defendants to exercise their police power to alleviate them. Local governments are empowered to respond appropriately to perceived needs relating to government functions, e.g. stability within the community and property values. The question is not whether the public perception is rational, but whether the government, in exercising its police power to enact legislation, has responded in a rational way to a perceived need for segregation of manufactured housing.

The evidence has shown such public perception in each of the Defendant municipalities concerning compatibility, tax erosion and property devaluation. Expert Finley testified regarding citizens' contributions to the process where public hearings were conducted concerning zoning ordinances and issues regarding manufactured housing. In the case of each Defendant municipality, the citizens' views and perceptions were indeed taken into consideration in the planning process, before the planning commissions and before the city councils.

The ordinances at issue were drafted in response to public perceptions and their restrictions on the location of manufactured houses bears a rational relationship to those perceptions. This is a democratic process, not a *ratiocinative* one, *i.e.,* a process of exact logical thinking.

"If the municipal council deemed any of the reasons which have been suggested, or any other substantial reason, a sufficient reason for adopting the ordinance in question, it is not the province of the courts to take issue with the council. We have nothing to do with the question of the wisdom or good policy of municipal ordinances. If they are not satisfying to a majority of the

citizens, their recourse is to the ballot—not the courts."

*Village of Euclid,* 272 U.S. at 393, 47 S.Ct. at 120 (quoting *State v. City of New Orleans,* 154 La. 271, 97 So. 440, 444 (1923)).

The arguments of Plaintiffs that there is nothing inherently different about manufactured housing which justifies such different treatment, and that manufactured housing is not necessarily incompatible with site-built housing, preservation of the tax base or preservation of market values of site-built homes, are arguments to be addressed to each legislative body concerned and to the citizens of these communities, rather than to the courts. Whether Plaintiffs' arguments concerning these issues are better reasoned than public perception does not trump the democratic process; the remedy is public debate and persuasion and not judicial fiat or ukase. In the absence of invidious discrimination based upon such illicit factors as race, religion or national origin, a majoritarian preference or persuasion, however "accurate," is a legitimate basis for local legislation.

Plaintiffs produced no evidence controverting that of Defendants that the public perception is that manufactured housing is incompatible with site-built housing and negatively affects property values, the tax base and stability of each Defendant community. Moreover, the undisputed evidence is that the relevant ordinances were enacted with reference to and are rationally related to addressing these public perceptions.

The reasons proffered for the ordinances "are sufficiently cogent to preclude us from saying, as it must be said before [they] can be declared unconstitutional, that such provisions are clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare." *Id.* at 395, 47 S.Ct. at 121.

■ Plaintiffs have not, therefore, discharged their burden of showing that there is no rational relationship between the ordinances and the public welfare. An element

of the relief sought here is an injunction against the enforcement of the restrictions of the ordinances at issue. It is sufficient to determine as I do that the ordinances in their general scope and dominant features, so far as their provisions are here involved, are a valid exercise of the respective Defendants' police power. *See id.* Accordingly, Plaintiffs' § 1983 Due Process and Equal Protection claims must fail.

3. *Claims under 42 U.S.C. § 1983 for violation of rights under the Commerce Clause, Article I, Section 8, of the United States Constitution.*

With the exception of CMHA, each Plaintiff has also asserted a claim for money damages against one of the Defendants under 42 U.S.C. § 1983 alleging that the enactment and enforcement of the standards and zoning ordinances in question have violated their constitutional rights afforded under the Commerce Clause, Article I, Section 8, of the United States Constitution. They maintain, because Defendants restrict the placement of manufactured homes within their territorial boundaries, the municipalities are depriving Plaintiffs of their constitutional right to engage in interstate commerce as guaranteed by the Commerce Clause.

■ Plaintiffs rely on "dormant" Commerce Clause principles. In addition to expressly empowering Congress to regulate commerce among the states, the Commerce Clause impliedly limits the states' power to burden interstate commerce. *Blue Circle Cement, Inc. v. Board of County Comm'rs,* 27 F.3d 1499, 1511 (10th Cir.1994). In this way the dormant Commerce Clause denies " 'the States the power unjustifiably to discriminate against or burden the interstate flow of articles of commerce.' " *Id.* (quoting *Oregon Waste Systems, Inc. v. Department of Envtl. Quality,* 511 U.S. 93, 98, 114 S.Ct. 1345, 1349, 128 L.Ed.2d 13 (1994)).[4] The Constitution, however, "when conferring upon Congress the regulation of commerce

---

4. "The Supreme Court has affirmed that the dormant Commerce Clause applies not just to State-imposed discrimination against, or burdens on, interstate commerce, but also to measures adopted by political subdivisions of the States that burden interstate commerce." *Blue Circle Cement,* 27 F.3d at 1511 n. 13 (citing *Fort Gratiot Sanitary Landfill, Inc. v. Michigan Dep't Natural Resources,* 504 U.S. 353, 361, 112 S.Ct. 2019, 2024–25, 119 L.Ed.2d 139 (1992)).

... never intended to cut the States off from legislating on all subjects relating to the health, life, and safety of their citizens, though the legislation might indirectly affect the commerce of the country." *Huron Portland Cement Co. v. Detroit*, 362 U.S. 440, 443–44, 80 S.Ct. 813, 816, 4 L.Ed.2d 852 (1960) (further quotation omitted).

■ It is undisputed that the ordinances in question are not affirmatively discriminatory against interstate commerce, *i.e.,* any effect they may have on interstate commerce is incidental. For this reason, I have already determined that the *Pike* balancing test, adopted by the Tenth Circuit in *Blue Circle Cement*, 27 F.3d at 1511, applies. *See Colorado Manufactured Housing Ass'n,* 946 F.Supp. at 1555. Under that test, I scrutinize "(1) the nature of the putative local benefits advanced by the Ordinance; (2) the burden the Ordinance imposes on interstate commerce; (3) whether the burden is 'clearly excessive in relation to' the local benefits; and (4) whether the local interests can be promoted as well with a lesser impact on interstate commerce." *Blue Circle Cement* at 1512 (quoting *Pike,* 397 U.S. at 142, 90 S.Ct. at 847) (footnote omitted).

Plaintiffs argue none of the subject zoning ordinances can withstand the test set forth in *Pike* and adopted in *Blue Circle Cement.* They maintain there is no evidence to suggest any of the putative benefits of the ordinances, such as protection of the tax base, property values and housing compatibility, are in fact promoted by the ordinances, which they assert place an outright prohibition on manufactured housing, a product whose market is interstate in nature. They assert further, even if the ordinances promoted the claimed benefits underlying their enactment, such interests could be promoted to an equal degree by other measures such as imposing aesthetic standards on housing which would have a lesser impact on interstate commerce.

Defendants rely on *Texas Manufactured Housing Association, Inc. v. City of Nederland,* 101 F.3d 1095 (5th Cir.1996), where the City of Nederland denied a lot owner a permit to place a manufactured home on a lot. Together with the Texas Manufactured Housing Association, the lot owner filed suit asserting the zoning ordinance that prohibited placement of "trailer coaches" on any lot within city limits except in a "duly authorized park" violated the dormant Commerce Clause. Citing lost sales of HUD-code manufactured homes, plaintiffs argued the ordinance placed a burden on interstate commerce which was clearly excessive compared with the local interest served. They contended Nederland had not demonstrated that preserving property values was a legitimate governmental interest. Further, they maintained the ordinance did not in fact achieve the stated objective. Plaintiffs claimed the city, rather than place a ban on HUD-code manufactured homes not placed in trailer parks, could have adopted the less restrictive alternative of requiring that such homes comply with certain aesthetic requirements.

The Fifth Circuit upheld the district court in applying the *Pike* balancing test to determine whether the burden on interstate commerce was clearly excessive to the local benefit served. *Id.* at 1104. The appeals court found it was not evident that plaintiffs had demonstrated a burden on interstate commerce "at all." *Id.* There, the ostensible burden consisted of more than $900,000 in lost sales of HUD-code manufactured homes manufactured by out-of-state firms for placement on individual, privately-owned lots in the City of Nederland.

*Texas Manufactured Housing* quoted the Supreme Court's statement that " 'the [Commerce] Clause protects the interstate market, not particular interstate firms, from prohibitive or burdensome regulations.' " *Id.* (quoting *Exxon Corp. v. Governor of Maryland,* 437 U.S. 117, 127–28, 98 S.Ct. 2207, 2215, 57 L.Ed.2d 91 (1978)). The Fifth Circuit found the plaintiffs had not demonstrated that whatever mode of housing was built in lieu of HUD-code manufactured homes would be provided by in-state suppliers. *Id.* The appeals court concluded therefore plaintiffs had not raised a genuine issue as to whether any burden the ordinance might impose on interstate commerce was clearly excessive to the local benefits and upheld the district court's granting of summary judgment. *Id.*

Here, Defendants argue, as in *Texas Manufactured Housing*, the ordinances at issue affect out-of-state manufacturers and in-state manufacturers equally, and Plaintiffs have not shown that whatever mode of housing is built in lieu of the manufactured homes will be provided by in-state suppliers. Moreover, they point out, none of the Defendants completely eliminates manufactured housing from its territory. The Silt ordinance permits the placement of HUD-code homes in neighborhoods zoned R–3, while restricting their placements in R–1 and R–2. Salida permits HUD-code homes in zone R–4, but restricts them in R–1 and R–3. Fountain's ordinance limits placement of HUD-code and-UBC code homes to the MHPS zone and the PZ–R zone. Similarly, Frederick's Zoning Code restricts HUD-code and UBC-code homes to a low-density residential zone, MFH, consisting of dwellings partially or entirely manufactured in a factory.

Plaintiffs nevertheless argue the manufactured housing industry is primarily dominated by out-of-state commerce, the restriction on placement of manufactured homes prohibits the sale of a product which moves in interstate commerce, and the cumulative effect if similar ordinances were enacted in other communities would be to affect substantially the movement of manufactured homes in interstate commerce. Plaintiffs also maintain the exclusion of manufactured housing favors local builders.

I agree with Defendants that there is no proof at all, nor could there be, that the relevant ordinances burden interstate commerce. Nevertheless, out of an abundance of caution, I apply the *Pike* balancing test to determine whether any incidental burden on interstate commerce is excessive in relation to any local benefits and whether local interests might be promoted as well by other means with a lesser impact on interstate commerce.

I first examine the nature of the local benefits advanced by the ordinances. Those cited by Defendants include protection of the tax base through maintenance of property values, compatibility of housing, stability of the Defendant communities and local control of land use.

Defendants maintain their ordinances advance the benefit of compatibility of land uses, allowing the communities concerned to keep a balanced housing stock, and promoting a sense of homogeneity of housing and community. Plaintiffs argue there is no evidence that manufactured housing cannot be compatible with site-built homes, and that manufactured homes are continually improving in appearance to the point where they are often similar in appearance to site-built homes. Moreover, Plaintiffs note, none of the Defendants imposes aesthetic requirements for site-built housing in their primary residential areas.

As Plaintiffs concede, however, not every manufactured home is compatible with every site-built home. Moreover, Mr. Finley, Mr. Kovacs, all four of the assessors, including Mr. McCloskey, Mayor Tagliente and Trustee Wyatt, who related the comments at a public meeting, testified that, by and large, the manufactured housing in the communities concerned does not look like the site-built housing.

Defendants also refer to the local interest in minimizing the lower tax base caused by manufactured housing. With the exception of Mr. Shonts, the El Paso County assessor, the assessors all testified the HUD-code homes assess lower than the UBC-code homes, which in turn assess lower than the site-built homes in the Defendant counties.

A further benefit is the desire to protect property values. The testimony of Mr. Smedsrud from the City of Fountain, Mr. Yale and Ms. Fazzi from Silt, Patt Brooks and Dave Potts from Salida, Warren Lasell, Weld County Administrator, Alex Kovacs, and the Plaintiffs' appraisal expert, Jim McCloskey, as well as the statements of citizens at public meetings, support the Defendants' position that the public perception is that manufactured homes negatively affect the value of site-built homes in the same neighborhood. There was also testimony that site-built homes appreciate faster than manufactured homes.

Important in this regard is the testimony of Mr. Finley regarding citizens' contributions to the process where public hearings

are conducted concerning zoning ordinances and issues regarding manufactured housing. There was evidence that, in the case of each Defendant municipality, the citizens' thinking was taken into consideration in the planning process, before the planning commission and before the city councils.

As discussed in relation to the § 1983 claims for violations of equal protection and due process, where the public perception exists that manufactured houses are incompatible with site-built houses, threaten the tax base or cause depreciation of market values of site-built homes, the legislative branch of each municipality is authorized to address these perceptions. Defendants may legitimately exercise their police power to alleviate the citizens' concerns. In so doing, they advance local benefits as perceived by the community.

Moreover, looking to the third factor to be considered under *Pike,* Plaintiffs have not discharged the heavy obligation of showing that the burden on interstate commerce which any of the ordinances may impose is "clearly excessive" in relation to these local benefits. Finally, the Plaintiffs suggest the local interests served by the ordinances could be promoted as well by imposing aesthetic requirements on housing in certain zones. However, as Mr. Finley testified, it is not the business of municipalities to impose burdensome aesthetic requirements, a task reserved for developers who have restrictive covenants. Further, there has been no showing as to how a municipality would decide on aesthetic standards to address issues of compatibility of different types of houses, or how such standards could be enforced. There is no evidence that such measures would be in any way feasible to promote local interests, let alone that it would have a lesser impact than the current ordinances on interstate commerce.

Scrutinizing the evidence pertaining to the *Pike* balancing test, I find Plaintiffs have not established the subject zoning ordinances unjustifiably burden the flow of interstate commerce. Therefore, the § 1983 claims based on violation of the Commerce Clause fail.

## V. CONCLUSION.

For the aforesaid reasons, I conclude Plaintiffs have not proved their § 1983 claims on the basis of violation of their rights under the Equal Protection, Due Process, or Commerce Clauses of the United States Constitution. I therefore find in favor of Defendants. I do not make an award of attorney fees against any party on the § 1983 claims. Accordingly,

IT IS ORDERED THAT judgment shall enter in favor of Defendants and against Plaintiffs;

IT IS FURTHER ORDERED THAT this case is DISMISSED with each party to pay his, her or its own costs.